**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Clifford W. Taylor       Michael F. Cavanagh
                         Elizabeth A. Weaver
                         Marilyn Kelly
                         Maura D. Corrigan
                         Robert P. Young, Jr.
                         Stephen J. Markman

FILED JULY 16, 2008

MICHIGAN FEDERATION OF TEACHERS
and SCHOOL RELATED PERSONNEL,
AFT, AFL-CIO,

     Plaintiff-Appellee,

v                                No. 133819

UNIVERSITY OF MICHIGAN,

     Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

In this case, we must decide if the home addresses and telephone numbers of University of Michigan employees sought through a Freedom of Information Act (FOIA) request are exempt from disclosure under FOIA's privacy exemption.[1] We hold that employees' home addresses and telephone numbers meet both prongs of FOIA's privacy exemption because that information is "of a personal nature" and its disclosure would constitute a "clearly unwarranted invasion of an

---

[1] MCL 15.243(1)(a).

individual's privacy." In reaching this conclusion, we reexamine the definition of "information of a personal nature" set forth by this Court in *Bradley v Saranac Community Schools Bd of Ed*,[2] and conclude that it unnecessarily limited the intended scope of that phrase. We cure this deficiency and revise that definition to encompass information of an embarrassing, intimate, *private*, or *confidential* nature. We conclude that employees' home addresses and telephone numbers are information of an embarrassing, intimate, private, or confidential nature. Disclosure of this information would constitute a "clearly unwarranted invasion of an individual's privacy" in this case primarily because the core purposes of FOIA would not be advanced by its disclosure to plaintiff. With both prongs of the privacy exemption satisfied, we hold that the University of Michigan employees' home addresses and telephone numbers are exempt from disclosure.

Accordingly, the decision of the Court of Appeals is reversed and the circuit court's grant of summary disposition in favor of defendants is reinstated.

FACTS AND PROCEDURAL HISTORY

Plaintiff Michigan Federation of Teachers submitted a FOIA request to defendant University of Michigan's chief FOIA officer seeking numerous items of information that defendant possessed regarding every University of Michigan employee. The information sought included first and last names, job title, compensation rate, and work address and telephone number. Two additional items

_____

[2] 455 Mich 285; 565 NW2d 650 (1997).

of information sought by plaintiff, which are the subject of this appeal, are the employees' home addresses and telephone numbers.

Defendant timely responded to the FOIA request and provided nearly all the information plaintiff sought. With respect to the home addresses and telephone numbers, defendant released the information of 20,812 employees who had given defendant their permission to publish their home addresses and telephone numbers in the University of Michigan's faculty and staff directory. Defendant did not turn over the home addresses and telephone numbers of the remaining 16,406 employees who had withheld permission to publish that information in the directory. Thus, defendant denied the FOIA request in part, relying on the privacy exemption and stating that the information's release would constitute an unwarranted invasion of these employees' privacy.

Plaintiff filed suit in the Washtenaw Circuit Court seeking to compel the release of the remaining home addresses and telephone numbers. The parties filed cross-motions for summary disposition. Defendant attached to its motion six affidavits from employees who did not want their home addresses and telephone numbers released to the public. Some of the affiants attested that the release of this information would threaten their own or their family's safety.

The circuit court granted defendant's motion for summary disposition. It ruled that the employees' home addresses and telephone numbers were information of a personal nature and that "one would be hard pressed to argue that

3

disclosure 'contributes significantly to public understanding of the operations or activities of the government.'"

The Court of Appeals reversed the circuit court in an unpublished opinion per curiam.[3] Relying on *Bradley,* the panel held that home addresses and telephone numbers were not "information of a personal nature" because they did not reveal intimate or embarrassing details of an individual's private life, even when considered against the "customs, mores, or ordinary views of the community." It also held that no caselaw supported the proposition that public employees' home addresses and telephone numbers were items of personal information,[4] and that in those reported cases where home addresses were held to be exempt from disclosure under the privacy exemption the plaintiffs had sought disclosure of addresses to access other information that was personal.[5]

The panel, however, recognized that certain employees might have legitimate reasons to avoid disclosure of their personal information. Relying on *Tobin,* it ruled that on remand defendant "may determine whether any of its

---

[3] *Michigan Federation of Teachers and School Related Personnel, AFT, AFL-CIO v Univ of Michigan*, unpublished opinion per curiam of the Court of Appeals, issued March 22, 2007 (Docket No. 258666).

[4] *Id.* at 3, citing *Tobin v Civil Service Comm*, 416 Mich 661, 671; 331 NW2d 184 (1982), and *State Employees Ass'n v Dep't of Mgt & Budget*, 428 Mich 104, 124; 404 NW2d 606 (1987).

[5] *Id.*, citing *Mager v Dep't of State Police*, 460 Mich 134; 595 NW2d 142 (1999); *Detroit Free Press, Inc v Dep't of State Police*, 243 Mich App 218; 622 NW2d 313 (2000); *Clerical-Technical Union of Michigan State Univ v Michigan State Univ Bd of Trustees*, 190 Mich App 300; 475 NW2d 373 (1991).

4

employees not included in the directory have demonstrated 'truly exceptional circumstances' to prevent disclosure of names, addresses, and telephone numbers."

Judge Wilder concurred with the majority's decision under *Bradley*, but raised two points. First, he suggested that *Bradley*'s reading of the statutory language was inconsistent with its plain meaning and was worthy of reexamination. Second, he questioned whether the advent of the national do-not-call registry[6] and the rising nationwide problem of identity theft had significantly altered the "customs, mores, or ordinary views of the community" concerning the disclosure of personal identifying information since the *Bradley* Court decided the issue in 1997.

Defendant filed an application seeking leave to appeal, which this Court granted.[7]

---

[6] Pub L 108-82, § 1, 117 Stat 1006.

[7] 480 Mich 902 (2007). The order granting leave asked the parties to address

> (1) whether this Court should reconsider its construction of MCL 15.243(1)(a)'s statutory phrase "information of a personal nature" as meaning information that "reveals intimate or embarrassing details of an individual's private life," as set forth in *Bradley v Saranac Bd of Ed*, 455 Mich 285, 294 (1997); (2) whether, on the facts presented in this case, information that might otherwise be considered "ordinarily impersonal . . . might take on an intensely personal character," (quoting *Kestenbaum v Michigan State Univ*, 414 Mich 510, 547 [1982]), such that the privacy exemption might properly be asserted as argued by the defendant; and (3) if the *Bradley* test is not
>
> (continued…)

5

## STANDARD OF REVIEW

This Court reviews de novo the trial court's decision to grant a motion for summary disposition.[8] This Court reviews de novo as a question of law issues of statutory interpretation.[9] And as we stated in an earlier FOIA case,

> [b]ecause our judicial role precludes imposing different policy choices than those selected by the Legislature, our obligation is, by examining the statutory language, to discern the legislative intent that may reasonably be inferred from the words expressed in the statute. If the language of a statute is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted. We must give the words of a statute their plain and ordinary meaning.[10]

---

(…continued)

modified, whether the advent of the National Do-Not-Call Registry, PL 108-82, § 1, 117 Stat 1006, as well as the creation of the host of methods, unknown to the Court in 1997, which are designed for illicit purposes such as identity theft, have any impact on whether the disclosure of the home addresses and telephone numbers requested is inconsistent with "the customs, mores, or ordinary views of the community" (quoting *Bradley*, at 294) by which the applicability of the privacy exemption is evaluated.

[8] *Herald Co v Bay City*, 463 Mich 111, 117; 614 NW2d 873 (2000).

[9] *Wood v Auto-Owners Ins Co*, 469 Mich 401, 403; 668 NW2d 353 (2003); *Herald Co, Inc v Eastern Michigan Univ Bd of Regents,* 475 Mich 463, 471-472; 719 NW2d 19 (2006).

[10] *Herald Co*, 463 Mich at 117-118 (citations omitted).

## ANALYSIS

### 1. Background to FOIA and the Privacy Exemption

Consistent with the legislatively stated public policy supporting the act,[11] the Michigan FOIA requires disclosure of the "public record[s]"[12] of a "public body"[13] to persons who request to inspect, copy, or receive copies of those requested public records.[14] However, § 13 of FOIA[15] sets forth a series of exemptions granting the public body the discretion to withhold a public record from disclosure if it falls within one of the exemptions.[16] In the event a FOIA request is denied and the requesting party commences a circuit court action to compel disclosure of a public record, the public body bears the burden of sustaining its decision to withhold the requested record from disclosure.[17]

---

[11] MCL 15.231(2).

[12] MCL 15.232(e).

[13] MCL 15.232(d).

[14] MCL 15.233.

[15] MCL 15.243.

[16] See *Herald Co*, 463 Mich at 119 n 6 ("It is worth observing that the FOIA does not prevent disclosure of public records that are covered by § 13 exemptions. Rather, it requires the public body to disclose records unless they are exempt, in which case the FOIA authorizes *nondisclosure* at the agency's discretion.") (emphasis in original; citations omitted).

[17] MCL 15.240(4).

The FOIA exemption at issue in this case is the privacy exemption, MCL 15.243(1)(a), which states:

> (1)  A public body may exempt from disclosure as a public record under this act any of the following:
>
> (a)  Information of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy.

This Court has attempted to construe this provision on many occasions since the enactment of the Michigan FOIA in 1976 and struggled for nearly as many years to reach a consensus regarding its proper interpretation. *Kestenbaum v Michigan State Univ*,[18] marked the first occasion that this Court interpreted the privacy exemption.  The plaintiff, for purposes of political mailings, requested a computer tape containing the names and addresses of the university's students.  He sued when Michigan State denied the request.  An equally divided Court affirmed the Court of Appeals decision that the tape was exempt.[19]

Chief Justice Fitzgerald's opinion held that the release of the computer tape would violate the privacy exemption.  Focusing on the statutory requirement that "the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy," Chief Justice Fitzgerald opined that

---

[18] 414 Mich 510; 327 NW2d 783 (1982).

[19] Chief Justice Fitzgerald, joined by Justices Williams and Coleman, wrote the opinion affirming the Court of Appeals.  Justice Ryan wrote an opinion advocating reversal of the Court of Appeals, joined by Justices Kavanagh and Levin.  The late Justice Blair Moody did not participate.

there has remained throughout this country's legal history one recognized situs of individual control the dwelling place. Without exception, this bastion of privacy has been afforded greater protection against outside assaults than has any other location.[20]

He reasoned that disclosure of the magnetic tape would constitute an invasion of privacy because

> any intrusion into the home, no matter the purpose or the extent, is definitionally an invasion of privacy. *A fortiori*, the release of names and addresses constitutes an invasion of privacy, since it serves as a conduit into the sanctuary of the home.[21]

Further, where the student information would be distributed in electronic rather than print form Chief Justice Fitzgerald argued presciently that this invasion was "clearly unwarranted" because "the pervasiveness of computer technology has resulted in an ever-increasing erosion of personal privacy."[22]

Justice Ryan's dissenting opinion would have ordered the release of the computer tape. Examining the privacy exemption, Justice Ryan argued for a two-part inquiry to analyze MCL 15.243(1)(a). First, the requested information must be "of a personal nature." Second, if the information is of a personal nature, its disclosure must constitute a "clearly unwarranted invasion of an individual's privacy." Justice Ryan argued that the information sought was not "of a personal

[20] *Id.* at 524.

[21] *Id.* at 524-525.

[22] *Id*. at 531. Even in 1982, which some might consider part of the technological "stone age," Chief Justice Fitzgerald warned that "[w]hile it is true that the computer era has brought untold benefits for society, it also is fraught with potential dangers to our notions of individual autonomy." *Id*. at 531-532.

9

nature" because he was "satisfied that names, addresses, telephone numbers, and other standard identifying information simply are not embarrassing information 'of a personal nature' for the overwhelming majority of students at Michigan State University."[23] He took the view that

> [m]ost citizens voluntarily divulge their names and addresses on such a widespread basis that any alleged privacy interest in the information is either absent or waived. People applying for employment reveal their names and addresses on their resumes; cashing a check or using a credit card requires the release of one's address; and ordering magazines or otherwise communicating through the mail reveals one's address. Being a licensed driver, a car owner, a property owner or taxpayer, an officer of a corporation, an applicant for a marriage license, or a registered voter requires revelation, at a minimum, of one's name and address, information which is often routinely made available to the public. While some people might *prefer* that their names and addresses not be known to certain individuals such as advertisers, bill collectors, or freeloading relatives, that preference is simply not based on the fact that one's address is a "personal", intimate, or embarrassing piece of information. We leave for another day the question whether, in certain unusual circumstances, ordinarily impersonal information might take on an intensely personal character.[24]

Justice Ryan concluded by arguing that even if the information was "of a personal nature" its disclosure was not a "clearly unwarranted invasion of privacy" because the students had ways to avoid unwanted mailings and because "the public

---

[23] *Id.* at 546.

[24] *Id.* at 546-547.

benefits of voter registration and political campaigning contemplated in this case clearly outweigh any minimal invasion of privacy."[25]

After *Kestenbaum*, this Court decided several cases without being able to provide a majority rule for the proper construction of the privacy exemption. In *Tobin v Civil Service Comm*,[26] a "reverse" FOIA case,[27] this Court unanimously held that FOIA "authorizes, but does not require, nondisclosure of public records falling within a FOIA exemption."[28] The plaintiffs challenged the defendants' decision to release the names and addresses of all classified civil service employees. Even though the parties agreed that the privacy exemption was applicable, this Court declined to consider whether the names and addresses were exempt under FOIA because it rejected the plaintiff's threshold argument that the Michigan FOIA affirmatively prohibited their disclosure. In *Int'l Union, United Plant Guard Workers of America v Dep't of State Police*,[29] another evenly divided Court affirmed the Court of Appeals decision ordering the release of reports containing the names and addresses of guards employed by certain security guard

---

[25] *Id.* at 554.

[26] 416 Mich 661; 331 NW2d 184 (1982).

[27] In a reverse FOIA case, the plaintiff seeks to *prohibit* the release of public records sought by a third party, rather than compel their disclosure. *Id.* at 663.

[28] *Id.* at 667. Justice Riley did not participate in the decision.

[29] 422 Mich 432; 373 NW2d 713 (1985).

agencies.[30]  Two years later, this Court issued another fractured decision in *State Employees Ass'n v Dep't of Mgt & Budget*.[31]  Five members of this Court affirmed the Court of Appeals, which had ordered disclosure of the home addresses of certain state civil service bargaining units; one member dissented, and another did not participate.[32]

In *Swickard v Wayne Co Med Examiner*,[33] this Court finally reached a majority result and rationale applying the privacy exemption.[34]  In *Swickard*, the plaintiff sought the autopsy report and toxicology test results of a judge who was found shot to death in his mother's home.  Rejecting the defendant's argument that the privacy exemption protected their disclosure, Justice Riley's majority opinion concluded, first, that the records were not "information of a personal nature."  To define "personal," the majority consulted a dictionary and discovered that it meant

---

[30] Justices Levin and Ryan wrote opinions affirming the Court of Appeals with Justice Boyle concurring in both.  Justices Riley and Brickley wrote dissenting opinions that would have reversed the Court of Appeals.  Justice Williams joined Justice Riley's opinion.  Justice Cavanagh did not participate.  Thus, this Court divided two-two-two-one on the proper analysis.

[31] 428 Mich 104; 404 NW2d 606 (1987).

[32] Although Justice Cavanagh's lead opinion was joined by Justices Levin and Archer, it did not garner a majority on every point.  Justices Brickley and Boyle concurred in the result, but disagreed with the lead opinion's rationale.  Justice Riley dissented, arguing that the privacy exemption precluded disclosure of the addresses.  Justice Griffin did not participate.

[33] 438 Mich 536; 475 NW2d 304 (1991).

[34] Justice Griffin concurred in the result only.  Justices Levin and Mallett dissented.

12

"[o]f or pertaining to a particular person; private; one's own . . . .  Concerning a particular individual and his intimate affairs, interests, or activities; intimate . . . ."[35]  The majority also approvingly noted that Justice Ryan, in his *Kestenbaum* dissent, had defined that statutory phrase as something "personal, intimate, or embarrassing."  The majority further reasoned that it would look to the common law and constitutional law to determine if disclosure would violate a privacy right protected under FOIA.[36]  It held that the scope of the privacy exemption would be gauged by reference to "the customs, mores, or ordinary views of the community . . . ."[37]  After concluding that the deceased judge and his family had no common-law or constitutional right to privacy with respect to the records after his death, the majority concluded that the records were not "information of a personal nature" and thus their disclosure was not an invasion of privacy.

In *Booth Newspapers, Inc v Univ of Mich Bd of Regents,*[38] the plaintiff newspapers sought travel records created in conjunction with the university's

---

[35] *Id*. at 547, quoting *The American Heritage Dictionary of the English Language: Second College Edition* (1976).

[36] *Id.* at 556 ("Our review of the common law and constitutional law is helpful insofar as we are given points of reference through a highly subjective area of the law where the Legislature has provided little statutory guidance on the notion of privacy contained in the FOIA.").

[37] *Id.* at 547.

[38] 444 Mich 211; 507 NW2d 422 (1993).

search for a new president. The university argued that the records were exempt under the privacy exemption. This Court held that this information was not "of a personal nature" because there were no customs, mores, or ordinary views of the community that warranted a finding that the travel expense records of a public body constituted information of a personal nature.[39]

In *Bradley,* the central case under consideration in the present appeal, this Court decided whether the personnel records of public school teachers and administrators were exempt from disclosure under the privacy exemption. The *Bradley* Court affirmed that this exemption contains two elements: first, that the information sought is "of a personal nature," and, second, that the disclosure of the information would be a "clearly unwarranted invasion of privacy." With respect to the first element, the majority observed:

> In the past, we have used two slightly different formulations to describe "personal nature." The first defines "personal" as "[o]f or pertaining to a particular person; private; one's own . . . Concerning a particular individual and his intimate affairs, interests, or activities, intimate. . . . " We have also defined this threshold inquiry in terms of whether the requested information was "personal, intimate, or embarrassing." Combining the salient elements of each description into a more succinct test, we conclude that information is of a personal nature if it reveals intimate or embarrassing details of an individual's private life. We evaluate this standard in terms of "the 'customs, mores, or ordinary views of the community' . . . ."[40]

---

[39] *Id*. at 233. Justices Boyle and Riley dissented separately from the majority on the FOIA issue. Justice Griffin joined Justice Riley's dissent.

[40] *Bradley*, 455 Mich at 294.

14

Using this new definition, the majority concluded that the personnel records sought in *Bradley* were not "of a personal nature" because they did not contain any "embarrassing, intimate, private, or confidential" matters.[41]

*Bradley* has since served as the template for the first prong of the privacy exemption. This Court decided two cases involving this exemption after *Bradley*: *Mager v Dep't of State Police*[42] and *Herald Co v Bay City*.[43] In *Mager*, the plaintiff made a FOIA request for the names and addresses of persons who owned registered handguns. The State Police denied the FOIA request pursuant to the privacy exemption. Relying on the *Bradley* definition that "'information is of a personal nature if it reveals intimate or embarrassing details of an individual's private life,'"[44] this Court held in a unanimous per curiam decision that the records

---

[41] *Id.* at 295. Justice Boyle, joined by Justices Cavanagh and Kelly, dissented in part from the majority and criticized the majority for significantly narrowing the definition of the term "personal nature" and adopting its more "succinct" definition. The dissenters would have retained the two definitions of "personal nature" from *Swickard* and *Kestenbaum* "of or pertaining to a particular person; private; one's own . . . . Concerning a particular individual and his intimate affairs, interests, or activities; intimate" and "personal, intimate, or embarrassing" rather than narrowing the definition. They concurred in the result, however, because they did not believe that disclosure of the records would constitute a clearly unwarranted invasion of privacy.

[42] 460 Mich 134; 595 NW2d 142 (1999).

[43] 463 Mich 111; 614 NW2d 873 (2000).

[44] *Mager*, 460 Mich at 143, quoting *Bradley*, 455 Mich at 294.

15

fell within this first prong because gun ownership was information of a personal nature as an intimate or perhaps embarrassing detail of one's personal life.[45]

The *Mager* Court then moved to the second prong of the test—whether "disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy"—and devised what has since been labeled the "core purpose test." *Mager* took guidance from the United States Supreme Court's decision in *United States Dep't of Defense v Fedl Labor Relations Auth*,[46] in which the Court employed a balancing test under the federal FOIA's privacy exemption.[47] Under that test, "'a court must balance the public interest in disclosure against the interest Congress intended the exemption to protect,'" and the "'only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purposes of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government.'"[48] This Court, like the Court in *Dep't of Defense*, also approvingly quoted the statement that "'disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or

---

[45] *Id*. at 144. Justice Cavanagh concurred in the result only.

[46] 510 US 487; 114 S Ct 1006; 127 L Ed 2d 325 (1994).

[47] 5 USC 552(b)(6) ("This section does not apply to matters that are . . . (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.").

[48] *Mager*, 460 Mich at 145, quoting *Dep't of Defense,* 510 US at 495.

nothing about an agency's own conduct'" would not advance the core purpose of FOIA.[49] In addition, this Court noted that, like the United States Supreme Court, it was "'reluctant to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions.'"[50] Applying these principles, the *Mager* Court concluded that, under any reasonable balancing, disclosure of the gun-ownership information would constitute a clearly unwarranted invasion of an individual's privacy because it was entirely unrelated to any inquiry regarding the inner working of government or how well the Department of State Police was fulfilling its statutory functions.

In *Herald Co*, this Court unanimously held that the defendant Bay City violated FOIA when it refused to disclose public records concerning the final candidates for the position of Bay City fire chief, in particular the candidates' names, current job titles, cities of residence, and ages. Citing the *Bradley* definition, this Court stated the test for "information of a personal nature" that "'information is of a personal nature if it reveals *intimate or embarrassing details of an individual's private life*. We evaluate this standard in terms of "the 'customs, mores, or ordinary views of the community'. . . . "'"[51] This Court

---

[49] *Id.*, quoting *Dep't of Justice v Reporters Committee for Freedom of the Press*, 489 US 749, 773; 109 S Ct 1468; 103 L Ed 2d 774 (1989).

[50] *Mager*, 460 Mich at 146 n 23, quoting *Dep't of Defense*, 510 US at 501.

[51] *Herald Co*, 463 Mich at 123-124, quoting *Mager,* 460 Mich at 142, quoting *Bradley,* 455 Mich at 294.

17

concluded that "the fact of application for a public job, or the typical background information one may disclose with such an application, is simply not 'personal' within the contemplation of this exemption."[52] Moreover, this Court held that the community's mores, customs, and views would not support that this information was of a personal nature.

Although the records failed to satisfy the first prong of the privacy exemption, this Court went on to discuss why the records would also fail the second prong. Citing the *Mager* core-purpose test, this Court noted that disclosure of the information concerning the final candidates for fire chief would serve the policy underlying FOIA because it would facilitate the public's access to information regarding the affairs of their city government. Thus, the invasion of privacy, assuming there was one, was not "clearly unwarranted."[53]

---

[52] *Id*. at 125.

[53] *Id*. at 127. Since we decided *Bradley* and *Mager*, the Court of Appeals on several occasions has upheld a public body's decision to withhold identifying information under the privacy exemption. See, e.g., *Kocher v Dep't of Treasury*, 241 Mich App 378; 615 NW2d 767 (2000) (addresses of property owners in unclaimed property holder reports); *Detroit Free Press, Inc v Dep't of State Police*, 243 Mich App 218; 622 NW2d 313 (2000) (whether certain Michigan state legislators held concealed weapons permits); *Larry S Baker, PC v Westland*, 245 Mich App 90; 627 NW2d 27 (2001) (names, addresses, injury codes, and accident dates of all injured, potentially injured, or deceased accident victims during a six-month period who were not at fault for the accident); *Detroit Free Press, Inc v Dep't of Consumer & Industry Services*, 246 Mich App 311; 631 NW2d 769 (2001) (all consumer complaints filed with defendant against property insurers in 1999); *Stone Street Capital, Inc v Bureau of State Lottery*, 263 Mich App 683; 689 NW2d 541 (2004) (personal information about prize winners and their assignees).

Thus, the privacy exemption, as currently interpreted, has two prongs that the information sought to be withheld from disclosure must satisfy. First, the information must be "of a personal nature." Second, it must be the case that the public disclosure of that information "would constitute a clearly unwarranted invasion of an individual's privacy." We analyze whether the home addresses and telephone numbers in this case satisfy both prongs, particularly the tests for both that we articulated in *Bradley* and *Mager*.

2. "Information of a personal nature"

In answering the first question whether the home addresses and telephone numbers of university employees are "information of a personal nature," we also reconsider whether *Bradley*'s exposition of that phrase fully captures its intended meaning. The concurring judge on the Court of Appeals suggested, and defendant argues, that the *Bradley* articulation is too narrow.[54]

We hold that the *Bradley* formulation, as far as it goes, is a correct description of what information is "of a personal nature." Thus, we continue to hold that "intimate" or "embarrassing" details of an individual are "of a personal nature." However, a case such as this leads us to conclude that "intimate" and "embarrassing" do not exhaust the intended scope of that statutory phrase. Indeed, the *Bradley* Court itself noted, whether inadvertently or not, that "information of a

---

[54] Indeed, this was also the position of Justices Boyle, Cavanagh, and Kelly, who dissented in *Bradley*. See *Bradley,* 455 Mich at 307-308.

personal nature" includes more than "intimate" or "embarrassing" details of a person's life. After articulating its "succinct test," the *Bradley* Court expanded it by concluding that "none of the documents [sought in that case] contain information of an embarrassing, intimate, *private*, or *confidential* nature."[55] After careful consideration, we conclude that the observation from *Bradley* that intimate, embarrassing, private, *or* confidential information is "of a personal nature" more accurately and fully describes the intended scope of the statutory text as assessed in the first prong of the privacy exemption. Indeed, the words "personal" and "private" are largely synonymous.[56] Thus, private or confidential information relating to a person, in addition to embarrassing or intimate details, is "information of a personal nature."[57]

With the test thus clarified, the next question is whether employees' home addresses and telephone numbers reveal embarrassing, intimate, private, or confidential details about those individuals. We hold that they do. Where a person lives and how that person may be contacted fits squarely within the plain

---

[55] *Bradley*, 455 Mich at 295 (emphasis added).

[56] *The American Heritage Dictionary of the English Language, New College Edition*, p 978 (1976).

[57] While *Bradley* might not have created the most satisfying rubric for interpreting the privacy exemption and while we might have approached the privacy exemption differently were we writing on a blank slate, we also consider that "the mere fact that an earlier case was wrongly decided does not mean overruling it is invariably appropriate." *Robinson v Detroit*, 462 Mich 439, 465; 613 NW2d 307 (2000). *Bradley* is not so unworkable or badly reasoned, in our view, that we must overrule rather than modify it.

meaning of this definition because that information offers private and even confidential details about that person's life. As Chief Justice Fitzgerald noted in *Kestenbaum*, "the release of names and addresses constitutes an invasion of privacy, since it serves as a conduit into the sanctuary of the home."[58]

The potential abuses of an individual's identifying information, including his home address and telephone number, are legion. For example, some of the affiants in this case attested that they do not want their information added to mass mailings, perhaps seeking to avoid the inevitable harassing telephone calls of telemarketers or deluge of junk mail. On a more serious level, other affiants stated that their physical safety or the safety of their families would be jeopardized if their identifying information fell into the wrong hands, such as those of an ex-spouse or a disgruntled patient. These realistic concerns illustrate in practical ways why an individual's home address and telephone number are "information of a personal nature."[59]

---

[58] *Kestenbaum*, 414 Mich at 524-525. This case is not the first occasion where this Court has considered whether home addresses and telephone numbers are "information of a personal nature." This Court has a checkered history of splintered and equally divided decisions attempting to determine whether this type of information is "of a personal nature." Compare *Kestenbaum* with *United Plant Guard Workers* and *State Employees Ass'n*. Under the more accurate definition of "information of a personal nature" we adopt today, however, we settle the question and hold that home addresses and telephone numbers constitute private information about individuals.

[59] This Court held in *Bradley*, and elsewhere, that the customs, mores, and ordinary views of the community inform our understanding of the privacy

(continued…)

exemption, particularly where the Legislature has provided little statutory guidance about the FOIA's conception of privacy. See *Mager*, 460 Mich at 140 quoting *Swickard*, 438 Mich at 556 ("Our review of the common law and constitutional law is helpful insofar as we are given points of reference through a highly subjective area of the law where the Legislature has provided little statutory guidance on the notion of privacy contained in the FOIA.").

Although we need not reach the analysis that considers the customs, mores, and ordinary views of the community, we are mindful of changes in our society that the widespread introduction of electronic communications has occasioned. One increasingly pernicious problem is identity theft, the misuse of another individual's personal information to commit fraud, which costs businesses and consumers billions of dollars every year, ruins lives, and undermines the reliability of our financial transactions and institutions. See The President's Identity Theft Task Force, *Combating Identity Theft: A Strategic Plan*, April 2007. <http://www.identitytheft.gov/reports/StrategicPlan.pdf> (accessed April 17, 2008), at 10-11.

In 2004, the Michigan Legislature enacted 2004 PA 452, the Identity Theft Protection Act, MCL 445.61 *et seq*., whose title states, among other things, that it is an act "to prohibit certain acts and practices concerning identity theft." It seeks to protect "personal identifying information," which includes "a person's name, address, [and] telephone number," the very type of information sought by plaintiff in this case. MCL 445.63(o). See also, e.g., Identity Theft and Assumption Deterrence Act, as amended by PL 105-318, 112 Stat 3007; Identity Theft Penalty Enhancement Act, as amended by PL 108-275, 118 Stat 831; Fair and Accurate Credit Transactions Act of 2003, PL 108-159, 117 Stat 1952; see also recent state legislation regarding identity theft, e.g., Ala Code 13a-8-190 *et seq*.; Alas Stat 11.46.565 *et seq*.; Ariz Rev Stat Ann 13-2008 *et seq*.; Ark Code Ann 5-37-227 *et seq*.; Cal Penal Code 530.5 *et seq*.; Colo Rev Stat 18-5-901 *et seq*.; Conn Gen Stat 53a-129a *et seq*.; Del Code Ann tit 11, § 854 *et seq*.; DC Code 22-3227.01 *et seq*.; Fla Stat 817.568; Ga Code Ann 16-9-120 *et seq*.; Hawaii Rev Stat 708-839.6 *et seq*.; Idaho Code Ann 18-3124 *et seq*.; 720 Ill Comp Stat 5/16g-1 *et seq*.; Ind Code 35-43-5-3.5; Iowa Code 715a.8 *et seq*.; Kan Stat Ann 21-4018; Ky Rev Stat Ann 514.160 and 514.170; La Rev Stat Ann 14:67.16; Md Code Ann, Crim Law 8-301 *et seq*.; Mass Gen Laws ch, 266, § 37e; Minn Stat 609.527; Miss Code Ann 97-45-1 *et seq*.; Mont Code Ann 45-6-332; Neb Rev Stat 28-608; Nev Rev Stat Ann 205.461 *et seq*.; NH Rev Stat Ann 638.25 *et seq*.; NJ Stat Ann 2c:21-17 *et seq*.; NM Stat 30-16-24.1; NY Penal Law 190.77 *et seq*.; NC Gen Stat 14-113.20 *et seq*.; ND Cent Code 12.1-23-11; Ohio Rev Code Ann 2913.49; Okla Stat tit 21, §

And, although the federal FOIA privacy exemption contains language different from Michigan's FOIA privacy exemption, the United State Supreme Court's treatment of that provision is useful to our analysis.[60]  In *Dep't of Defense,* the Court unanimously rejected a union's federal FOIA request seeking the home addresses of federal civil service employees.  Addressing the employees' interest in the nondisclosure of their home addresses, it opined:

> It is true that home addresses often are publicly available through sources such as telephone directories and voter registration

(…continued)
1533.1 *et seq.*; Or Rev Stat 165.800; 18 Pa Cons Stat 4120; RI Gen Laws 11-49.1-1 *et seq.*; SC Code Ann 16-13-500 *et seq.*; SD Codified Laws 22-40-8 *et seq.*; Tenn Code Ann 39-14-150; Tex Penal Code Ann 32.51; Utah Code Ann 76-6-1101 *et seq.*; Vt Stat Ann tit 13, § 2030; Va Code Ann 18.2-186.3; Wash Rev Code 9.35.001 *et seq.*; W Va Code 61-3-54; Wis Stat 943.201; Wyo Stat Ann 6-3-901.

Were it necessary to rely on the customs, mores, and ordinary views of the community, we think this recent, positive law enacted by our Legislature (and other jurisdictions) signals that the customs, norms, and ordinary views of the community regard personal identifying information such as home addresses and telephone numbers as being "of a personal nature."  At the very least, this is *some* evidence buttressing the conclusion we reach independently.

[60] *Mager*, 460 Mich at 144 ("[T]he privacy exemption in the federal FOIA is worded differently than the corresponding state provision.  For that reason, federal decisions concerning the privacy exemption are of limited applicability in Michigan.  Nonetheless, federal law is generally instructive in FOIA cases."), citing *The Evening News Ass'n v City of Troy*, 417 Mich 481, 494-495; 339 NW2d 421 (1983).  The federal privacy exemption, 5 USC 552(b)(6), exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  Both the Michigan and federal exemptions refer to disclosure that would constitute a clearly unwarranted invasion of an individual's, or personal, privacy, the federal exemption covers "personnel and medical files and similar files" while the Michigan exemption covers, more generally, "information of a personal nature."

lists, but "[i]n an organized society, there are few facts that are not at one time or another divulged to another." The privacy interest protected by [the federal exemption] "encompass[es] the individual's control of information concerning his or her person." An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form.[61]

The Court astutely recognized that an individual's control over his identifying information is essential where the information regards such personal matters.

An individual's home address and telephone number might be listed in the telephone book or available on an Internet website, but he might nevertheless understandably refuse to disclose this information, when asked, to a stranger, a co-worker, or even an acquaintance. The disclosure of information of a personal nature into the public sphere in certain instances does not automatically remove the protection of the privacy exemption and subject it to disclosure in every other circumstance.

Finally, while it is not critical to our holding that home addresses and telephone numbers are "information of a personal nature," the fact that in this case certain university employees actively asserted control over their identifying

---

[61] *Dep't of Defense*, 510 US at 500 (citations omitted). *Dep't of Defense* relied heavily on *Dep't of Justice v Reporters Committee for Freedom of the Press*, 489 US 749, 773; 109 S Ct 1468; 103 L Ed 2d 774 (1989), in which the Court held that the disclosure of the contents of an FBI rap sheet to a third party could reasonably be expected to constitute an unwarranted invasion of personal privacy. It observed that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *Id*. at 763.

information by *withholding* their home addresses and telephone numbers from publication in the university faculty and staff directory undoubtedly lends credence to that conclusion.[62] Particularly in this case, then, the argument that this information is not "of a personal nature" reaches its nadir.[63]

---

[62] See *Dep't of Defense*, 510 US at 501 ("Whatever the reason that these employees have chosen not to . . . provide . . . their addresses, however, it is clear that they have *some* nontrivial privacy interest in nondisclosure.").

[63] Plaintiff relies on the doctrine of *expressio unius est exclusio alterius* to argue that identifying information can never be exempt under the privacy exemption because a subset of identifying information is exempted specifically in the law-enforcement exemption, MCL 15.243(1)(s). Under this doctrine, "the expression of one thing suggests the exclusion of all others." *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 712; 664 NW2d 193 (2003). It is a "long time legal maxim and a safe guide in the construction of statutes marking powers not in accordance with the common law." *Feld v Robert & Charles Beauty Salon*, 435 Mich 352, 362; 459 NW2d 279 (1990) (opinion by Riley, C.J.) quoting *Taylor v Public Utilities Comm*, 217 Mich 400, 402-403; 186 NW 485 (1922).

Plaintiff notes that the law-enforcement exemption (not to be confused with the law-enforcement-*purposes* exemption, MCL 15.243[1][b]) exempts from disclosure, among other things, the addresses and telephone numbers of active or retired law-enforcement officers or agents as well as the names, addresses or telephone numbers of their family members, relatives, children, or parents unless the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance. Plaintiff contends that the express exemption of this identifying information in the law-enforcement exemption suggests that the Legislature intended the disclosure of identifying information of other public employees.

Plaintiff's reliance on *expressio unius est exclusio alterius* is misplaced. It overlooks the fact that each FOIA exemption, by its plain language, advances a separate legislative policy choice. We do not necessarily infer from the express exemption of law-enforcement-related identifying information in one FOIA exemption that the Legislature intended to make the remaining FOIA exemptions unavailable to exempt identifying information of non-law-enforcement public employees. The different policies underlying these exemptions manifest

(continued…)

25

3. "Public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy"

Having reached this conclusion, we must move to the second prong of the privacy exemption and determine whether disclosure of the information at issue would constitute a clearly unwarranted invasion of an individual's privacy. We conclude, under *Mager*'s core-purpose test, that it would result in a clearly unwarranted invasion of privacy. Simply put, disclosure of employees' home addresses and telephone numbers to plaintiff would reveal "'little or nothing'" about a governmental agency's conduct,[64] nor would it further the stated public policy undergirding the Michigan FOIA.[65] Disclosure of employees' home

─────────────────────

(…continued)
themselves in differently-worded standards for disclosure. The Legislature defined the scope of the privacy exemption generally and did not articulate each and every instance where information would be "of a personal nature" and when its disclosure "would constitute a clearly unwarranted invasion of an individual's privacy." By contrast, the Legislature specifically targeted the law-enforcement exemption to exempt from disclosure specific public records originating from law-enforcement agencies "[u]nless the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance." Simply because the Legislature saw fit to enact a specific provision to protect law-enforcement-related information from disclosure, it does not follow that non-law-enforcement-related identifying information *can never* be exempt. In short, plaintiff would have us compare apples to oranges.

[64] See *Mager*, 460 Mich at 145, quoting *Dep't of Justice v Reporters Committee for Freedom of the Press*, 489 US 749, 773; 109 S Ct 1468; 103 L Ed 2d 774 (1989).

[65] MCL 15.231(2) ("It is the public policy of this state that all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public
(continued…)

26

addresses and telephone numbers would not shed light on whether the University of Michigan and its officials are satisfactorily fulfilling their statutory and constitutional obligations and their duties to the public. When this tenuous interest in disclosure is weighed against the invasion of privacy that would result from the disclosure of employees' home addresses and telephone numbers, the invasion of privacy would be "clearly unwarranted."

CONCLUSION

We hold that information is "of a personal nature" if it constitutes intimate, embarrassing, private, or confidential details about an individual. In this case, employees' home addresses and telephone numbers are information "of a personal nature." Moving to the second prong of the privacy exemption, we conclude that the disclosure of employees' home addresses and telephone numbers does not further a core purpose of FOIA by shedding light on whether the University of Michigan is functioning properly and consistently with its statutory and constitutional mandates.

---

(…continued)
employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process.").

Accordingly, we reverse the Court of Appeals and reinstate the trial court's order granting defendant summary disposition.

Robert P. Young, Jr.
Clifford W. Taylor
Michael F. Cavanagh
Maura D. Corrigan
Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

MICHIGAN FEDERATION OF
TEACHERS and SCHOOL RELATED
PERSONNEL, AFT, AFL-CIO,

       Plaintiff-Appellee,

v                                   No. 133819

UNIVERSITY OF MICHIGAN,

       Defendant-Appellant.

_____

KELLY, J. (*concurring in part and dissenting in part*).

The issue is whether the privacy exemption[1] of the Freedom of Information Act[2] (FOIA) exempts from disclosure the home addresses and telephone numbers of University of Michigan employees. The majority decides that it does. I agree that the unlisted[3] home addresses and telephone numbers of employees who refused to give the university permission to publish that information are exempt from disclosure. But I believe that information that individuals allowed to be published is not exempt. Thus, I dissent from the majority opinion insofar as it

_____

[1] MCL 15.243(1)(a).

[2] MCL 15.231 *et seq.*

[3] When I use the term "unlisted" in this opinion, I am referring to information that is not published in the public telephone directory.

holds that the home addresses and telephone numbers of *all* the defendant's employees are exempt from disclosure.

FACTS

Plaintiff Michigan Federation of Teachers and School Related Personnel, AFT, AFL-CIO made a FOIA request to defendant University of Michigan. Plaintiff sought numerous items including the home address and telephone number of each of defendant's employees. Defendant provided all requested information except for the addresses and telephone numbers of those employees who had withheld permission to have this information published in the faculty and staff directory. Defendant claimed that the information was exempt from disclosure under the privacy exemption to FOIA.

Plaintiff brought suit in Washtenaw Circuit Court seeking disclosure of this information. Both parties moved for summary disposition. In support of its motion, defendant included affidavits from six employees detailing their reasons for withholding consent. The reasons were wide-ranging. One employee was concerned that an ex-spouse could use the information to locate and hurt her. Another simply believed it would be unfair to disclose unlisted addresses and telephone numbers.

The circuit court granted summary disposition to defendant. It reasoned that the home addresses and telephone numbers of employees who had refused to give permission to publish that information was information of a personal nature.

2

The court added that disclosure of this information would not contribute significantly to public understanding of the operations or activities of government.

In an unpublished opinion per curiam, the Court of Appeals reversed the circuit court decision.[4] The privacy exemption does not generally include home addresses and telephone numbers, it reasoned, because they do not reveal intimate or embarrassing details of an individual's private life. However, the majority also held that defendant had persuasively argued that some employees could be exposed to harm if this information were disclosed. Accordingly, it remanded the case to the trial court to consider which of defendant's employees had demonstrated exceptional circumstances sufficient to exempt their addresses and telephone numbers from disclosure.

This Court granted defendant's application for leave to appeal to "reconsider its construction of [the privacy exemption]."[5]

THE PRIVACY EXEMPTION

The privacy exemption to FOIA provides:

> (1) A public body may exempt from disclosure as a public record under this act . . .
>
> (a) Information of a personal nature if public disclosure of the

---

[4] *Michigan Federation of Teachers & School Related Personnel, AFT, AFL-CIO v Univ of Michigan*, unpublished opinion per curiam of the Court of Appeals, issued March 22, 2007 (Docket No. 258666).

[5] 480 Mich 902 (2007).

3

information would constitute a clearly unwarranted invasion of an individual's privacy.[6]

For years this Court has struggled to give meaning to this statutory provision. The Court arrived at its most recent interpretation in *Bradley v Saranac Community Schools Bd of Ed*.[7] It observed:

> The privacy exemption consists of two elements, both of which must be present for the exemption to apply. First, the information must be of a "personal nature." Second, the disclosure of such information must be a "clearly unwarranted invasion of privacy." In the past, we have used two slightly different formulations to describe "personal nature." The first defines "personal" as "of or pertaining to a particular person; private; one's own . . . . Concerning a particular individual and his intimate affairs, interests, or activities; intimate . . . ." We have also defined this threshold inquiry in terms of whether the requested information was "personal, intimate, or embarrassing." Combining the salient elements of each description into a more succinct test, we conclude that information is of a personal nature if it reveals intimate or embarrassing details of an individual's private life. We evaluate this standard in terms of "the 'customs, mores, or ordinary views of the community.'"[8]

Defendant asks us to overrule *Bradley*'s interpretation of the phrase "of a personal nature," arguing that *Bradley* incorrectly interpreted the statutory language. The majority partly accepts the invitation, holding that the *Bradley* formulation of the phrase is overly narrow.

---

[6] MCL 15.243(1)(a).

[7] *Bradley v Saranac Community Schools Bd of Ed*, 455 Mich 285; 565 NW2d 650 (1997).

[8] *Id.* at 294.

4

I did not join the majority opinion in *Bradley*. Instead, I joined Justice Boyle's partial dissent. Justice Boyle took issue with the majority's constricted interpretation of the phrase "of a personal nature,"[9] preferring the definitions arrived at in *Kestenbaum v Michigan State Univ*[10] and *Swickard v Wayne Co Medical Examiner*.[11] In *Kestenbaum*, Justice Ryan concluded that information is of a personal nature if it is "'personal,' intimate, or embarrassing."[12] *Swickard* defined the phrase "of a personal nature" as "'[o]f or pertaining to a particular person; private; one's own . . . . Concerning a particular individual and his intimate affairs, interests, or activities; intimate . . . .'"[13]

Although the majority does not explicitly recognize it, its interpretation of the phrase "of a personal nature" is consistent with the definitions arrived at in *Kestenbaum* and *Swickard*. In fact, the majority's interpretation represents a synthesizing of the two. When one combines the definitions in *Kestenbaum* and *Swickard*, information is "of a personal nature" if it reveals private, intimate, or

---

[9] *Id.* at 306-307 (Boyle, J., dissenting in part).

[10] *Kestenbaum v Michigan State Univ*; 414 Mich 510; 327 NW2d 783 (1982).

[11] *Swickard v Wayne Co Medical Examiner*; 438 Mich 536; 475 NW2d 304 (1991).

[12] *Kestenbaum*, 414 Mich at 547 (opinion of Ryan, J.).

[13] *Swickard*, 438 Mich at 547, quoting *The American Heritage Dictionary of the English Language, Second College Edition* (1976).

embarrassing information about a particular person. The majority holds that "intimate, embarrassing, private, or confidential information is 'of a personal nature.'"[14] The majority's interpretation of the privacy exemption is consistent with my position in *Bradley*, and I agree with it.[15]

But *Bradley,* being precedent of this Court, should be followed unless weighty reasons exist for abandoning it. As the United States Supreme Court recently recognized, "considerations [of stare decisis] impose a considerable burden upon those who would seek a different interpretation that would necessarily unsettle . . . Court precedents."[16] I am confident that substantial reasons exist for expanding *Bradley*'s interpretation of the privacy exemption.

*Bradley* was decided 10 years ago. Since that time, society has come to recognize that identity fraud poses a major problem.[17] Because of it, individuals are encouraged not to make public their personal information for fear it be used to

---

[14] *Ante* at 20 (emphasis deleted).

[15] The majority's interpretation differs from *Kestenbaum* and *Swickard* in that neither case defined the phrase "of a personal nature" to include confidential information. They did provide that private information is "of a personal nature." If information is confidential, it is necessarily private. Thus, as I see it, private information includes confidential information. Therefore, any discrepancy between the *Kestenbaum* and *Swickard* definitions and the majority's interpretation is a distinction without a difference.

[16] *CBOCS West, Inc v Humphries*, ___ US ___, ___; 128 S Ct 1951, 1958; 170 L Ed 2d 864 (2008).

[17] See The President's Identity Theft Task Force, *Combating Identity Theft: A Strategic Plan*, April 2007. <http://www.identitytheft.gov/reports/StrategicPlan.pdf> at 1 (accessed May 29, 2008).

victimize them.[18]  And individuals have taken notice of this trend and are now more vigilant in protecting their personal information.[19]

Accordingly, it appears that, since *Bradley* was decided, increasing incidents of identity fraud have caused a change in behavior.  When the facts underlying a court decision drastically change and render the decision outdated, a reexamination of the decision is required.[20]  The changes that have occurred since *Bradley* was decided illustrate that individuals have an interest in preventing the disclosure of more than intimate or embarrassing information.  They reasonably wish to prevent the disclosure of other information they keep private.  These changes in fact make it appropriate for us to overrule *Bradley* to the extent it holds that private information is not "of a personal nature."

As a consequence, I concur with the majority's decision to expand *Bradley*'s interpretation of the privacy exemption.  But I part company from the majority in its application of the new interpretation.

APPLICATION OF THE NEW INTERPRETATION OF THE PRIVACY EXEMPTION

I differ in two respects with the majority's application of the law to the facts of this case.  First, defendant has already given plaintiff the home addresses and telephone numbers of those employees who consented to the publication of

---

[18] *Id.* at 39.

[19] *Id.* at 11-12.

[20] *Parker v Port Huron Hosp,* 361 Mich 1, 24-25; 105 NW2d 1 (1960); *Brown v Bd of Ed*, 347 US 483, 492-495; 74 S Ct 686; 98 L Ed 873 (1954).

that information in the faculty and staff directory. Thus, to resolve this case, the majority need not decide whether the home addresses and telephone numbers of *all* of defendant's employees constitute information "of a personal nature." It need only decide whether the home addresses and telephone numbers of employees who refused to allow publication of this information in the school directory are exempt from disclosure. The majority overreaches by unnecessarily deciding the case on a broader basis.

Second, I disagree with the majority's decision insofar as it holds that the home addresses and telephone numbers of *all* defendant's employees are exempt. Merely because some of defendant's employees keep their addresses and telephone numbers private does not mean that the addresses and telephone numbers of *all* the employees is information "of a personal nature."

Employees whose addresses and home telephone numbers are unlisted and who refused to allow defendant to publish them in the school directory have done everything possible keep that information private. And, by taking action to protect their addresses and telephone numbers from mass dissemination, these individuals have indicated that they consider the information private. Thus, it is reasonable to conclude that the home addresses and telephone numbers of those employees is information "of a personal nature."

Under the privacy exemption, information that is "of a personal nature" is exempt if disclosure of it would constitute a "clearly unwarranted invasion of an

8

individual's privacy."[21] The disclosure of the addresses and telephone numbers of employees who have made efforts to keep this information private would constitute an unwarranted invasion of their privacy. Therefore, I would hold that this information is exempt from disclosure.

But it does not follow that the home addresses and telephone numbers of all defendant's employees is information "of a personal nature."[22] Employees who either have a listed telephone number or who have given defendant permission to publish their information have released their information for mass viewing. By so doing, they have allowed the information to become public.

Individuals who have allowed their information to be made public cannot be heard to argue that the information is private. It is illogical to decide that information pertaining to an individual is private information if the individual himself or herself does not treat it that way. Therefore, the home addresses and telephone numbers of those employees who either have a listed telephone number or who have allowed defendant to publish their information is generally not "of a personal nature." If information is not "of a personal nature," the privacy exemption does not apply to it.

---

[21] MCL 15.243(1)(a).

[22] The burden is on the public body to justify its refusal to disclose the requested information. MCL 15.240(4). The public body does not justify its refusal by showing that some of the requested information is exempt. It must show that all the requested information is exempt.

9

Of course, public information could be "of a personal nature" if disclosure of it reveals something intimate or embarrassing about an individual. For instance, in *Mager v Dep't of State Police*,[23] plaintiff requested the addresses of persons who owned registered handguns. The information sought in *Mager* is an example of information that is "of a personal nature" regardless of whether the individual allows it to be made publicly available. Disclosing that information would reveal something intimate about the individual: that he or she owns a handgun. The information requested in the case on appeal would reveal that the employee works for defendant, not an intimate or embarrassing fact. Thus, I would hold that defendant must turn over the home addresses and telephone numbers of employees who have not taken steps to keep that information private.

## CONCLUSION

I agree with the decision to expand *Bradley*'s interpretation of the privacy exemption to provide that private information is "of a personal nature." But unlike the majority, I do not believe that the home addresses and telephone numbers of *all* defendant's employees come within the terms of the privacy exemption. I would hold that the home addresses and telephone numbers of employees whose telephone numbers are unlisted and who have not allowed defendant to publish

---

[23] *Mager v Dep't of State Police,* 460 Mich 134; 595 NW2d 142 (1999).

10

this information are exempt from disclosure.  But defendant must disclose the home addresses and telephone numbers of its other employees.


                                             Marilyn Kelly
                                             Elizabeth A. Weaver

11