PEOPLE v PAUL WILLIAMS

Docket No. 55146. Submitted April 22, 1982, at Detroit.—Decided
   July 19, 1982.
   Paul Williams was convicted by a jury in Monroe Circuit Court of
      transporting a female for purposes of prostitution and was
      sentenced, James J. Kelley, J. Defendant appeals. *Held:*
         1. The trial court did not err by admitting into evidence a
      copy of a letter written by defendant while he was in jail
      awaiting trial. The exclusion of the letter would not have made
      a difference in the outcome of defendant's trial and the letter
      was not unlawfully seized. The deputy to whom the letter was
      given had a right to open and read the letter before delivering
      it to the inmate to whom it was addressed. The defendant's
      Fourth Amendment rights were not violated by the deputy's
      reading and copying the letter.
         2. Defendant's claim of ineffective assistance of counsel is
      without merit.
         Affirmed.

1. APPEAL — EVIDENCE — PRESERVING QUESTION — CONSTITUTIONAL
      QUESTION.
      Failure to object to admission of evidence at trial normally
      precludes appellate review of the admission of the evidence;
      however, an exception is recognized where a constitutional
      question is raised for the first time on appeal.

2. CONSTITUTIONAL LAW — PRISONS AND PRISONERS.
      Persons incarcerated in jail while awaiting trial are entitled to
      protection of the Fourth Amendment (US Const, Am IV).

3. PRISONS AND PRISONERS — MAIL.
      Jail authorities have the general right to open and read a

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 600.
[2, 4] 60 Am Jur 2d, Penal and Correctional Institutions § 41 *et seq.*
[3] 60 Am Jur 2d, Penal and Correctional Institutions § 47.
[5] 58 Am Jur 2d, New Trial § 161.
   Incompetency of counsel chosen by accused as affecting validity of
      conviction. 74 ALR2d 1390.

prisoner's mail in order to preserve the internal order and discipline of the institution and to maintain security against escape or unauthorized entry.

4. PRISONS AND PRISONERS — PERSONAL PAPERS — ATTORNEY-CLIENT CORRESPONDENCE — PERSONAL DIARIES.

Prisoners' personal papers, attorney-client correspondence, and personal diaries are not subject to scrutiny or search or seizure by prison officials absent a clear showing that papers or documents seized contain information concerning imminent danger to inmate safety or prison security.

5. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL — NEW TRIAL.

A criminal defendant is entitled to a new trial if his trial counsel did not perform at least as well as a lawyer with ordinary training and skill in the criminal law and did not conscientiously protect his client's interests, undeflected by conflicting considerations, or if defense counsel made a serious mistake without which the defendant would have had a reasonable likelihood of acquittal.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Michael W. LaBeau,* Prosecuting Attorney, and *William D. Bond,* Assistant Prosecuting Attorney, for the people.

*James H. Davies,* for defendant on appeal.

Before: BRONSON, P.J., and D. F. WALSH and C. W. SIMON,* JJ.

C. W. SIMON, J. Defendant was convicted by a jury of transporting a female for purposes of prostitution, MCL 750.459; MSA 28.714. He was sentenced to a term of from 8 to 20 years imprisonment. Defendant appeals of right.

During the late evening and early morning hours of June 15 and 16, 1980, four officers of the Monroe County Sheriff's Department were working in a rest area off I-75. The sheriff's department

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

had received numerous complaints that male and female persons were using this area to solicit for purposes of prostitution. Two of the undercover officers were positioned in two separate semi trucks. The other two officers were in a panel truck with an observation window. At approximately 11 p.m., the officers observed the defendant drive into the rest area and drop off two black females. Subsequently, one of the females solicited one of the officers positioned in the semi trucks. Sometime after midnight, the officers again observed the defendant enter the rest area and drop off a white female. This female solicited the officers in the semi trucks. She and the defendant were subsequently arrested.

While defendant was incarcerated in jail, he wrote a letter to Connie Bannister, an accused prostitute, who was an inmate at the same jail. The letter was given to a jailer, Vince Burkey, who copied the letter before delivering it to Ms. Bannister. That portion of the letter instructing Ms. Bannister to testify that she observed someone else driving defendant's car on the night in question was introduced into evidence at defendant's trial.

The defendant contends that the trial court erred in admitting the letter into evidence, as the letter was the product of an illegal search. No objection was made to the admission of the letter at trial. Normally, failure to object to admission of evidence at trial precludes review. *People v Duncan,* 402 Mich 1, 16; 260 NW2d 58 (1977). However, the Courts have recognized an exception when a constitutional question is raised for the first time on appeal. See *People v Crawl,* 401 Mich 1, 31, fn 20; 257 NW2d 86 (1977).

The first inquiry must be whether the exclusion

of the letter could make a difference at trial. We conclude that the exclusion of the letter would not have made a difference in the outcome of the trial. Eyewitness testimony established that defendant entered the rest area on two different occasions. On each occasion, he was transporting a female who subsequently solicited undercover officers as a prostitute. The portion of the letter admitted into evidence did not corroborate the testimony of the officers who testified at trial, nor did the letter link defendant to the crime. Rather, the purpose of the letter was an attempt to induce testimony to bolster defendant's story and in fact contained no self-incriminating statement.

Even though admission of the letter was not decisive, we determine that the letter was not unlawfully seized. Persons incarcerated in jail while awaiting trial are entitled to the protections guaranteed by the Fourth Amendment. *People v Trudeau,* 385 Mich 276, 281; 187 NW2d 890 (1971); *People v Carr,* 370 Mich 251; 121 NW2d 449 (1963). Therefore, the initial inquiry must focus on whether the police conduct violated defendant's reasonable expectations of privacy. *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967). To determine whether defendant had a reasonable expectation of privacy two questions must be asked: (1) did the defendant have a right to assume that his chosen means of communication would insure privacy; and (2) was the government intrusion on the privacy of defendant justified under the circumstances.

It has long been recognized that among the substantial and important government interests involved in the maintenance of penal institutions are the "preservation of internal order and discipline, the maintenance of institutional security

against escape or unauthorized entry". *Stroud v United States,* 251 US 15; 40 S Ct 50; 64 L Ed 103 (1919). More recent Supreme Court decisions in *Procunier v Martinez,* 416 US 396; 94 S Ct 1800; 40 L Ed 2d 224 (1974), and *Wolff v McDonnell,* 418 US 539; 94 S Ct 2963; 41 L Ed 2d 935 (1974), give clear recognition to the existence of a proper and identifiable governmental interest in the monitoring of communications to and from prisoners. The legitimate interest of the government in "institutional security" and "internal order and discipline" makes it not only reasonable but also necessary that jail authorities have the general right to open and read a prisoner's mail.

In *People v Oliver,* 63 Mich App 509, 515; 234 NW2d 679 (1975), we recognized the right of jail authorities to open a prisoner's mail for reasons of internal security. In *Oliver, supra,* the defendant was attempting to smuggle a letter out of jail. This Court found that jail authorities had the right to confiscate, open, and read the letter. In addition, this Court held that the letter was admissible into evidence at defendant's trial.

We find that Deputy Burkey had a right to open and read the letter before delivering it to another inmate. Defendant had no right to expect that he could use jail personnel to deliver messages without the jail personnel first determining whether such messages contained information adverse to their legitimate interest in preserving internal security, order, and discipline.

We find that, under the circumstances of this case, the defendant had no reasonable expectation of privacy with respect to the letter. Accordingly, the defendant's Fourth Amendment rights were not violated by the deputy's reading and copying the letter. In addition, we follow *People v Oliver,*

*supra,* and hold that the letter was admissible into evidence at defendant's trial.

We do not mean to say, nor could we, that a pretrial detainee forfeits many significant Fourth Amendment rights. Personal papers, attorney-client correspondence, and personal diaries are not subject to scrutiny or search or seizure by prison officials absent a clear showing that papers or documents seized contain information concerning "imminent danger to inmate safety or prison security". *United States v Hinckley,* 525 F Supp 1342, 1363 (D DC, 1981), *aff'd* 30 Crim L Rep (BNA) 2425 (1982).

We have examined defendant's claim of ineffective assistance of counsel and have found it to be without merit. Because the admission of the evidence was proper, counsel's failure to move for suppression was not a decisive error evincing ineffective representation. A defendant is entitled to a new trial if counsel did not perform "at least as well as a lawyer with ordinary training and skill in the criminal law" and did not "conscientiously protect his client's interests, undeflected by conflicting considerations". *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976). Further, defense counsel must not have made a serious mistake without which defendant would have had a reasonable likelihood of acquittal. *Garcia, supra,* 266; *People v Degraffenreid,* 19 Mich App 702, 718; 173 NW2d 317 (1969). Defense counsel's failure to move for suppression of the letter on Fourth Amendment grounds cannot reasonably be seen as having denied defendant the likelihood of acquittal.

Affirmed.