# STATE OF MICHIGAN

# COURT OF APPEALS

EARL D. BOOTH,

      Plaintiff-Appellant,

v

DEPARTMENT OF CORRECTIONS,

      Defendant-Appellee.

UNPUBLISHED
December 1, 2016

Nos. 331807; 332014
Court of Claims
LC No. 13-000173-MZ

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and GLEICHER, JJ.

PER CURIAM.

The Department of Corrections (DOC) refused several requests of its employee, Earl Booth, for the production of documents under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.* Litigation led to partial relief in Booth's favor. Following a remand from this Court, the Court of Claims summarily dismissed the remainder of Booth's claims and rejected his attempt to hold the DOC in contempt for failure to fulfill a prior court order. We vacate those orders and remand for further proceedings. However, we dismiss Booth's challenges to the lower court's denial of his request for attorney fees, costs, and other reimbursements as premature.

## I. FACTS

Plaintiff Earl Booth is employed by the DOC. In 2013, the DOC took some sort of adverse action against Booth for his treatment of a prisoner housed in a medical facility. The prisoner was talking on the telephone with his mother at the time of the interaction. Booth thereafter requested through FOIA the recording of the prisoner's telephone conversation, "a log of anyone who had listened to the recording, and two reports from the [DOC's] Allegations, Investigations, Personnel Action System (AIPAS)." *Booth v Dep't of Corrections*, unpublished opinion per curiam of the Court of Appeals, issued June 9, 2015 (Docket No. 324319), unpub op at 1 (*Booth I*). The DOC denied Booth's requests and he filed suit. The Court of Claims found the recorded conversation and AIPAS records exempt from disclosure, granted summary disposition to the DOC in that regard, and closed the case. *Id.*

This Court reversed in relation to the recorded conversation only. Specifically, this Court noted that the Court of Claims had not reviewed the recording and therefore could not have made an informed decision whether it was "exempt under privacy grounds." *Id.* at 3. In this regard,

-1-

the panel emphasized, "Booth clarified at oral argument before this Court that a conversation between Booth and the prisoner may also be heard on the recording, and it is access to this specific conversation—not any private conversation between the prisoner and his mother—that Booth seeks." *Id.*

On remand, the Court of Claims conducted an in camera review of the recorded conversation between the prisoner and his mother and concluded that it was not subject to FOIA disclosure. The court also rejected Booth's request for an order to show cause why the DOC should not be held in contempt of court for its failure to produce a log indicating what DOC employees listened to the telephone call, and denied Booth's request for attorney fees, costs, and other disbursements.

This appeal followed.

## II. RECORDING OF THE PRISONER'S PHONE CONVERSATION

Booth contends that on remand the Court of Claims improperly limited its review of the recorded conversation to only that portion during which Booth engaged the prisoner. He further challenges the lower court's determination that the recording was exempt from disclosure as "[i]nformation of a personal nature," public disclosure of which "would constitute a clearly unwarranted invasion of an individual's privacy." MCL 15.243(1)(a). "[T]he proper interpretation . . . of FOIA is a question of law" subject to review de novo. *Rataj v Romulus*, 306 Mich App 735, 747; 858 NW2d 116 (2014). "[T]he application of exemptions involving legal determinations are reviewed under a de novo standard" and those "involving discretionary determinations . . . should be reviewed" for clear error. *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 106-107; 649 NW2d 383 (2002).

FOIA commands that persons "are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees . . . so that they may fully participate in the democratic process." MCL 15.231(2). However, the Legislature made a policy decision to exempt and "shield[]" certain information "from public view." *Herald Co v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 472-473; 719 NW2d 19 (2006). " 'FOIA is a prodisclosure statute, and the exemptions . . . are narrowly construed.' " *Kent Co Deputy Sheriff's Ass'n v Kent Co Sheriff*, 463 Mich 353, 361; 616 NW2d 677 (2000), quoting *Bradley v Saranac Community Schools*, 455 Mich 285, 292-293 n 13; 565 NW2d 650 (1997).

MCL 15.243(1)(a) exempts from FOIA disclosure "[i]nformation of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy." "Information of a personal nature" includes "private or confidential information relating to a person" as well as "embarrassing or intimate details." *Mich Federation of Teachers & School Related Personnel, AFT, AFL-CIO v Univ of Mich*, 481 Mich 657, 676; 753 NW2d 28 (2008). In determining whether disclosure would be "a clearly unwarranted invasion of an individual's privacy," the court "must balance the public interest in disclosure against the interest [the Legislature] intended the exemption to protect." *Mager v Dep't of State Police*, 460 Mich 134, 145; 595 NW2d 142 (1999) (quotation marks and citation omitted). During this balancing analysis, "the only relevant public interest in disclosure . . . is the extent to

which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *Id.* (quotation marks, citations, and emphasis omitted).

In *Booth I*, this Court instructed the trial court to review the recording to determine whether some portion or portions are subject to disclosure under FOIA. We stated:

> In this case, where portions of the conversation may not be private and exempt, an in camera review of the recording is necessary to determine whether and to what extent the privacy exemption applies. Because the trial court did not review the recording, we conclude that it improperly granted summary disposition. [*Booth I* at 3.]

This analysis necessarily required the Court of Claims to listen to the recording in its entirety. It is unclear whether the Court of Claims judge did, in fact, listen to the entire recording. It is clear that the Court of Claims either did not engage in any balancing of Booth's interest as against the prisoner's, or did not believe it necessary to share its reasoning with the parties. The Court of Claims' discussion of this issue consisted of the following two sentences:

> At this Court's direction, Booth filed the instant motion before this Court ruled on the question of whether the recorded call was exempt from FOIA. This Court has since reviewed the recording and determined it is exempt.

We have reviewed the subject recording. Most of it was personal in nature. Keeping in mind the privacy interest at stake, our description of the recording must remain minimalistic. It appears that the prisoner was undergoing medical treatment that prevented proper draping of his hospital gown and yet Booth ordered him to comply with a proper prison attire rule. In the recording, Booth's voice is barely audible and we are not able to decipher his words. During this portion of the recording, the prisoner explains that his medical treatment prevents compliance.

Booth contends the prisoner has no privacy interest in his recorded conversation given his incarcerated status and because he was in violation of the prison dress code. It is certainly true that prisoners have a reduced privacy interest. Prison officials may search prisoners' cells without cause, see *Hudson v Palmer*, 468 US 517, 526; 104 S Ct 3194; 82 L Ed 2d 393 (1984), record their telephone conversations, *United States v Paul*, 614 F2d 115, 117 (CA 6, 1980), and open their mail, *People v Williams*, 118 Mich App 117, 121; 325 NW2d 4 (1982). This lack of privacy ensures prison safety and applies only to a prisoner's privacy interest in relation to prison and state personnel, not the general public. There simply is no precedent for relying on a prisoner's reduced privacy interest to support disclosure of a prisoner's private and intimate information under FOIA. While Booth additionally contends that the prisoner's dress code violation further limits his expectation of privacy, he has cited no legal support for this proposition. Moreover, Congress acknowledged the personal nature of an individual's medical care and treatment when it enacted the privacy provisions of the Health Insurance Portability and Accountability Act (HIPAA). See 42 USC 1306. Our Legislature, too, recognized the privacy interest at stake in exempting from FOIA disclosure "[i]nformation or records subject to the physician-patient privilege . . . ." MCL 15.243(1)(h).

On the other hand, there can be no doubt but that FOIA generally contemplates disclosure of the type of information Booth seeks:

> [T]he FOIA is part of Michigan's underlying legal environment—one of the ground rules of the relationship between citizen and government. The FOIA allows access to government records, so that informed citizens can pursue whatever remedies they believe are appropriate. Whether a parent in Saranac or Lansing can persuade the school board to take action with regard to policy or personnel (or whether a Kent County jail guard can get discipline set aside) is a separate and subsequent question. [*Kent Co Deputy Sheriff's Ass'n v Kent Co Sheriff*, 463 Mich 353, 361-362; 616 NW2d 677 (2000).]

The "separate legal question" here is whether Booth is entitled to have the disciplinary action taken against him set aside. Without disclosure, the answer to this question is almost certainly "no."

Thus, the recording includes private information exempt from disclosure under FOIA, and may also contain information falling squarely within FOIA's sphere of disclosure. FOIA provides that the presence of exempt information in a document or a recording does not eliminate a public body's responsibility to disclose the nonexempt information:

> (1) If a public record contains material which is not exempt under section 13, as well as material which is exempt from disclosure under section 13, the public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying.

> (2) When designing a public record, a public body shall, to the extent practicable, facilitate a separation of exempt from nonexempt information. If the separation is readily apparent to a person requesting to inspect or receive copies of the form, the public body shall generally describe the material exempted unless that description would reveal the contents of the exempt information and thus defeat the purpose of the exemption. [MCL 15.244.]

Our inability to decipher Booth's words does not end this case. We recognize that with technical enhancement, the quality of the recording may be considerably improved. Alternatively, other listeners may be able to discern more clearly what was being said. Disclosure of any relevant and audible portion of the recorded conversation could contribute to the public's (here Booth's) understanding of the operations of government (the basis for the adverse employment action taken against Booth by his government employer). Because the Court of Claims discerned no potential benefit to the public or was similarly unable to make sense of the sounds on the recording, it apparently made no attempt to conduct the required balancing.

Due to the procedural and technical difficulties that necessarily inhere in a determination of whether the information Booth seeks is exempt from disclosure, and in the interest of expediting this process, we remand for further record findings and analysis of the balance between the public and private interests at stake here. Before making these findings the Court of

Claims shall release a copy of the recording to Booth's counsel subject to a protective order permitting technical enhancement of the recording quality and strictly prohibiting disclosure of any information on the recording to third parties absent a court order. See *Int'l Union, United Plant Guard Workers of Am (UPGWA) v Dep't of State Police*, 118 Mich App 292, 297; 324 NW2d 611 (1982). Any technical assistant employed must be subject to the protective order and must sign an agreement to that effect.

## III. CONTEMPT OF COURT

Before this matter was transferred to the Court of Claims, it was under the jurisdiction of the Saginaw Circuit Court. Booth requested an order for disclosure of the names of any DOC officials who listened to the telephone conversation between the prisoner and his mother and in a separate request, the names of all "individuals" who listened to the call. The DOC disclosed "a single page" with personal information redacted, identifying one former DOC employee. Booth believed additional information would be available "on a computer system called the 'S Drive,' which keeps track of which MDOC employees access" recorded prisoner conversations "and when they did so." The DOC responded that the single name provided was the only information available on the S Drive. The circuit court determined that "this matter may be moot," but ordered the DOC to disclose any additional information that it had yet to share with Booth.

On June 12, 2014, Melody Wallace provided an affidavit identifying herself as the DOC employee in charge of handling FOIA requests at the time of Booth's submission. In relation to the subject request, Wallace indicated:

> Booth has alleged additional logs existed at the Charles E. Egeler Reception and Guidance Center (RGC) [at] the time his FOIA request was made. This allegation is not accurate because those records did not exist within MDOC under the name or description provided or by any other name reasonably known to the Department. The MDOC vendor for prisoner telephone service is Public Communications Services (PCS), Inc. I have been advised the MDOC may request PCS, a private telecommunications company, to generate a log regarding staff monitoring of prisoner telephone calls. These logs are generated only by PCS, and not by [the] MDOC. This log was not available at the time of the FOIA request. No RGC telephone logs were provided at the time of the FOIA request because Booth's request was for the log which documents each staff person who listened to the telephone call. Therefore, the FOIA request was denied since a log that showed all staff who listened to the call did not exist, as per Booth's FOIA request.

Booth urged the Court of Claims to find that the DOC had not complied with the circuit court's order and to hold the department in contempt or at least require the DOC to show cause why a contempt order should not enter. In his motion, Booth cited a DOC policy directive requiring the prison to maintain a record of staff members who listened to prisoner telephone calls. DOC documents regarding the internal investigation against Booth revealed that "A/Captain Clark" listened to and transcribed the recording. As such, Booth contended that Clark's name should have appeared on a log prepared by the DOC. Yet, after 2½ years, the DOC had still not produced the requested log as ordered by the circuit court, Booth complained.

In an order entered after this Court remanded the action to the Court of Claims in *Booth I*, the Court of Claims found that the requested records were not in the DOC's possession and "[a]t best, [the DOC] may have been able to request a log from a private vendor."[1] However, the DOC was not required under FOIA "to create a new public record" to satisfy Booth's request. The court also rejected Booth's contention that Captain Clark's name should have appeared on the DOC log pursuant to the DOC policy directive. Clark did not listen to the conversation as a "designated officer" who would be listed on the log under the directive; rather, he "listened to the recording as part of the investigation into a disciplinary issue" and was not required to log his action. Accordingly, the Court of Claims declined to hold the DOC in contempt or to issue a show cause order. Booth appeals this decision.

We review for an abuse of discretion a lower court's decision whether to hold a party in contempt, *In re Contempt of Henry*, 282 Mich App 656, 671; 765 NW2d 44 (2009), as well as its decision whether to convene a show-cause hearing, *Davis v Detroit Fin Review Team*, 296 Mich App 568, 624; 821 NW2d 896 (2012). Here, the Court of Claims did not act within its discretion.

DOC Policy Directive 05.03.130(CC) requires each prison warden to "designate a staff person to be responsible for the monitoring equipment and records, including audio recordings, of monitored calls." The warden must also designate staff members responsible for reviewing the recordings. "Each staff person shall document those calls or conversations listened to by maintaining a record of the date the call or conversation was listened to and by whom, the date the call was made, the PIN under which the call was made, and the number called." Wallace described that this function had been farmed out to a private contractor, PCS. In *MacKenzie v Wales Twp*, 247 Mich App 124, 129; 635 NW2d 335 (2001), this Court held that an entity "may not avoid [its] obligations under the FOIA by contracting for a clerical service that allows them to more efficiently perform an official function." This is exactly what happened in this case. The DOC is not in the telecommunications business and therefore contracted with a company in that field to manage its prison telephone system. PCS was bound to follow all statutes, regulations, and policy directives applicable to prison telephone systems, including the maintenance of a log of staff that accessed recordings of prisoner telephone calls. When the DOC received Booth's FOIA request for this log, it was required to request the information from PCS.

The Court of Claims bolstered its denial by noting specifically that neither the DOC nor PCS was required to enter Captain Clark's name into any review log because he was not a "designated" staff member as contemplated in the DOC policy directive. This is irrelevant. Booth did not request a log that would have included Clark's name, he requested a log containing the names of all individuals who reviewed the subject call. Clark's name may or may

---

[1] Contrary to the dissent, nothing in *Booth I* prohibited the Court of Claims from ruling on this motion, and nothing stands in the way of this Court's review of that ruling. Because *Booth I* did not limit the scope of the remand, the Court of Claims did not exceed its authority by addressing this issue.

not appear on the list, but the names of any number of as yet unidentified individuals may have been logged. The very point of requesting the log was to gather information that was unknown to Booth. The DOC never requested PCS to produce the log and this violated FOIA requirements.

We acknowledge that FOIA "does not require a public body to make a compilation, summary, or report of information" MCL 15.233(4), or "create a new public record," MCL 15.233(5). However, no such request was made in this case. The DOC is required by policy directive to log telephone monitoring activity. That duty was contracted out, but this does not mean that the required records were not made, they were simply made by a third party.

We decline, however, to hold the DOC in contempt in the first instance. Instead, we vacate the Court of Claims' denial of Booth's motion and remand for a show cause hearing. In the meantime, the DOC should uphold its duty and order production of the FOIA-requested log from PCS.

## IV. FEES, COSTS, AND OTHER DISBURSEMENTS

Booth also challenges the Court of Claims' denial of requests for attorney fees, costs, and other disbursements as a prevailing party under FOIA. As we have remanded this case for further consideration, it would be premature to discuss this issue. On remand, Booth may be vindicated on additional grounds, bolstering his reimbursement claim. Accordingly, Booth is free to again raise this issue below.

We vacate and remand for further proceedings consistent with this opinion. We dismiss as premature Booth's appellate claims regarding attorney fees and costs. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher