**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 12 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VITTORIA NORTH AMERICA,
L.L.C., an Oklahoma limited liability
company,

       Plaintiff-Appellee,

v.

EURO-ASIA IMPORTS INC., a
California sole proprietorship;
BEVERLY A. HANSING, DEBORAH
H. LETO, DENNIS R. HANSING, and
DEANNE MARIE HANSING, in their
capacity as Trustees of the Hansing
Family Trust Dated November 15,
1990

       Defendants-Appellants.

No. 00-6277

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 99-CV-1357-A)**

---

Frances E. Patton (Ted R. Rossier, Brandy K. Isom, and Susan A. Doke with her
on the briefs), of Pierce, Couch, Hendrickson, Baysinger & Green, L.L.P.,
Oklahoma City, Oklahoma, for Defendants-Appellants.

George H. Brown of Klingenberg & Associates, P.C., Oklahoma City, Oklahoma,
(Kenneth W. Klingenberg of Klingenberg & Associates P.C., Oklahoma City,
Oklahoma, and Stanley W. Ward with him on the brief), for Plaintiff-Appellee.

Before **EBEL** and **MCKAY**, Circuit Judges, and **CUDAHY**,[*] Senior Circuit Judge.

_____

**EBEL**, Circuit Judge.

_____

In this case we are called upon to interpret provisions of the Tariff Act of 1930 designed to protect domestic owners of trademarks affixed to goods produced overseas by foreign manufacturers. Plaintiff-Appellee Vittoria North America, L.L.C., ("VNA"), an Oklahoma limited liability company, alleges that it is the U.S. owner of the trademark Vittoria, which designates a well-known brand of bicycle tires. VNA alleges that Defendant-Appellant Euro-Asia Imports, a California sole proprietorship, has purchased Vittoria-branded tires overseas and imported them into the United States in violation of VNA's trademark rights. VNA sued Euro-Asia Imports and its sole proprietor Robert Hansing[1] (collectively "EAI") under § 526 of the Tariff Act (codified at 19 U.S.C. § 1526) ("the Act") seeking damages as well as an injunction to prevent EAI from continuing to import Vittoria bicycle tires into the United States. The Act states:

_____

[*]Honorable Richard D. Cudahy, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

[1]Robert Hansing died shortly before oral argument in this case. Accordingly, the Court granted a motion by trustees of the Hansing Family trust to substitute themselves for Hansing as defendants-appellants.

Except as provided in subsection (d) of this section, it shall be unlawful to import into the United States any merchandise of foreign manufacture if such merchandise, or the label, sign, print, package, wrapper, or receptacle, bears a trademark owned by a citizen of, or by a corporation or association created or organized within, the United States, and registered in the Patent and Trademark Office by a person domiciled in the United States, under the provisions of sections 81 to 109 of Title 15, and if a copy of the certificate of registration of such trademark is filed with the Secretary of the Treasury, in the manner provided in section 106 of said Title 15, unless written consent of the owner of such trademark is produced at the time of making entry.

19 U.S.C. § 1526. In other words, the Act provides so-called "gray market"[2] protection to U.S. owners of trademarks associated with goods of foreign manufacture, prohibiting any other person or entity from importing goods bearing that trademark into the United States without the consent of the trademark owner. See, e.g., K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 288-89 (1988). "The prototypical gray market victim . . . is a domestic firm that purchases from an independent foreign firm the rights to register and use the latter's trademark as a United States trademark and to sell its foreign manufactured products here." Id. at 286.

The district court granted VNA partial summary judgment, holding that the evidence showed that VNA owns and has properly registered the Vittoria

---

[2]"Gray market goods" are defined to include "[f]oreign-manufactured goods, bearing a valid United States trademark, that are imported without the consent of the U.S. trademark holder." Black's Law Dictionary 701 (6th ed. 1990).

trademark in the United States, that Vittoria-branded bicycle tires are manufactured overseas, and that EAI has imported Vittoria tires into the United States without VNA's consent. EAI now appeals, arguing that the evidence was insufficient to support summary judgment on the issue of whether VNA is the U.S. owner of the Vittoria trademark. EAI further argues that VNA is not entitled to protection under the Act because VNA is controlled by the foreign manufacturer of Vittoria tires. In addition, EAI argues we should reverse because the district court improperly denied it an opportunity to file a surrebuttal to VNA's reply brief on its motion for summary judgment. We AFFIRM.

## I. BACKGROUND

On November 25, 1992, VNA's predecessor Hibdon Tire Center entered into an agreement ("the 1992 Agreement") with Vittoria S.p.A. ("Vittoria Italy"), a company organized under the laws of Italy and with headquarters in Bergamo, Italy. Hibdon Tire Center agreed to form VNA as a North American distributor of Vittoria tires, and Vittoria Italy agreed to designate VNA as its exclusive distributor in the United States, Canada, and Mexico. VNA distributed Vittoria-branded bicycle tires in the United States from that time forward. In February 1999, Vittoria Italy entered into an agreement ("Assignment Agreement") with VNA purporting to assign VNA "all right, title and interest in and to the United

States Trademark 'VITTORIA' and the registration therefore . . . , together with the goodwill of the business connected with the use of and symbolized by said Trademark, as well as the right to sue for infringement of the Trademark or injury to said goodwill." The Assignment Agreement stated that "[t]he purpose of this Agreement is to permit Assignee [VNA] to act against infringers and unauthorized importers of Vittoria trademarked products into the United States." Vittoria Italy retained the right to retake title to the Trademark and its associated goodwill upon giving thirty days' written notice to VNA.

Shortly thereafter, VNA filed suit against EAI alleging that it infringed on VNA's trademark rights by importing Vittoria tires into the United States without first gaining VNA's consent. EAI concedes that it has been purchasing Vittoria-branded tires overseas and importing the tires into the United States since the early 1980s. VNA's suit seeks damages, an injunction to prevent further importation by EAI, and confiscation of EAI's inventory of Vittoria-branded products.

The district court granted VNA's motion for partial summary judgment, holding that undisputed facts in the case established VNA's right to protection under 19 U.S.C. § 1526. Vittoria N. Am., L.L.C. v. Euro-Asia Imports, No. CIV-99-1357-A, slip op. at 1 (W.D. Okla. July 12, 2000). Specifically, the district court found that "Vittoria" is a registered United States Trademark, id. at 3, that

Vittoria Italy assigned all of its rights, title and interest in the mark to VNA, and that the Assignment Agreement was recorded in the U.S. Patent and Trademark Office, id. The district court also found that VNA is not a subsidiary of Vittoria Italy, and has no common officers or directors with Vittoria, id. Finally, the district court found that the evidence showed EAI had imported and sold Vittoria-branded products in the United States. Id. The district court therefore enjoined EAI from further importation of Vittoria-branded products into the United States, although it did not address the issue of damages in its order. Id. at 12.

EAI now appeals the district court's injunction. EAI contends that the evidence relied upon by the district court was insufficient to prove VNA's ownership of the Vittoria trademark in the United States. Further, EAI argues that VNA is not entitled to protection under the Act because it falls under a regulatory exception denying gray market protection to U.S. companies if they are owned by or subject to common control with a foreign manufacturer of the trademarked goods. See 19 C.F.R. § 133.23(d)(1). Finally, EAI argues that the district court erred by failing to grant it leave to file a surrebuttal.

## II. DISCUSSION

The district court had jurisdiction pursuant to 28 U.S.C. § 1331, and we exercise jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). "In reviewing [an]

injunction, we may also address the summary judgment order that served as the district court's principal legal basis for granting the injunction because the district court's ruling on summary judgment was inextricably intertwined with its ruling granting a permanent injunction." Law v. Nat'l Collegiate Athletic Ass'n, 134 F.3d 1010, 1015 (10th Cir. 1998) (citations omitted).

We review de novo a district court's grant of summary judgment, and affirm only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, e.g., Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). We draw all inferences and construe the evidence in the light most favorable to the non-moving party. E.g., Kingsford v. Salt Lake City Sch. Dist., 247 F.3d 1123, 1128 (10th Cir. 2001).

A.     Local Rule 56.1(c)

Before reaching the merits of the arguments before us, we must briefly consider a threshold issue raised by VNA. VNA contends that a statement of facts appended to VNA's summary judgment motion should be construed as true for the purposes of this appeal because EAI violated Rule 56.1(c) of the Local

Court Rules for the Western District of Oklahoma in crafting its answer brief to the summary judgment motion. Rule 56.1(c) reads:

> The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of the movant's facts that is disputed. All material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.

We have reviewed EAI's answer brief, and we agree with VNA that it deviates from the requirements of Rule 56.1(c) in important respects. Nevertheless, we note that the district court did not rely on these imperfections in issuing its order, and "[t]his court has . . . recognized that district courts have discretion in applying local rules." Hernandez v. George, 793 F.2d 264, 266 (10th Cir. 1986). Moreover, VNA itself did not present this argument in its reply brief. Cf. Walker v. Mather, 959 F.2d 894, 896 (10th Cir. 1992) (in general, a court of appeals will not consider an issue that was not raised before the district court). Accordingly, we hold that EAI is not precluded from challenging VNA's version of events on the basis of its failure to comply with Local Rule 56.1(c).

B.     Transfer of Vittoria Trademark to VNA

We next consider EAI's contention that VNA is not entitled to gray market protection under the Act.  In order to prove entitlement to protection under the Act, VNA must show that it is a corporation or association created or organized within the United States, that it owns the Vittoria trademark in the United States, that the trademark is registered in the Patent and Trademark Office of the United States Customs Service, and that EAI is, without VNA's consent, importing Vittoria-branded goods of foreign manufacture.  19 U.S.C. § 1526(a).  The district court found that undisputed evidence sufficiently established each of these points.

EAI contests whether the evidence demonstrates that VNA owns the Vittoria trademark in the United States.  First, EAI asserts that the transfer was invalid for purposes of establishing any rights to gray market protection because the transaction was not at arm's-length and because VNA did not "pay dearly" for the assignment.  EAI relies on K Mart Corp. v. Cartier, Inc., 486 U.S. 281 (1988) to support its argument that the Act does not extend protection under such circumstances.  Cartier, however, does not purport to establish requirements for a valid transfer of a trademark.  Rather, it considers an exception to the Act exempting U.S. trademark holders from its protections who are owned by or under common control with a foreign manufacturer of trademarked goods. Cartier, 486 U.S. at 285 (noting that the issue in the case turned on interpretation of 19 C.F.R.

- 9 -

§ 133.21 (1987)).  Although we consider <u>Cartier</u>'s interpretation of this exception in detail further in this opinion, <u>Cartier</u> provides no assistance to EAI's challenge to whether an actual transfer of a trademark occurred to the putative U.S. owner in the first place.[3]

EAI next asserts that the transfer was invalid because the Assignment Agreement failed to transfer the goodwill associated with the trademark along with the trademark itself.  Courts have consistently held that a valid assignment of a trademark or service mark requires the transfer of the goodwill associated with the mark.  <u>See</u>, <u>e.g.</u>, <u>Sands, Taylor & Wood Co. v. Quaker Oats Co.</u>, 978 F.2d 947, 956 (7th Cir. 1992) ("[T]he transfer of a trademark apart from the goodwill of the business which it represents is an invalid 'naked' or 'in gross' assignment, which passes no rights to the assignee." (citation and quotations omitted)); <u>Berni</u>

---

[3]To the extent that EAI's briefs can be construed to argue that the evidence gives rise to an inference that the Assignment Agreement was a sham, we disagree.  EAI notes correctly that the evidence is sufficient to show that Vittoria Italy continues to market directly to original equipment manufacturers ("OEMs") – <u>i.e.</u>, bicycle manufacturers – in the United States and Canada.  Further, EAI points out that the Assignment Agreement contains a clause entitling Vittoria Italy to retake possession of the U.S. rights to the trademark with thirty days written notice.  However, Vittoria Italy's continued sales to U.S. OEMs does not show that the transfer lacked validity.  Rather, it demonstrates only that VNA has failed to enforce its trademark with respect to that market against Vittoria Italy. Likewise, the thirty-day reassignment clause does not establish that the transfer is a sham, as the district court noted in its summary judgment order.  <u>Premier Dental Prods. Co. v. Darby Dental Supply Co.</u>, 794 F.2d 850, 855-56 (3d Cir. 1986) ("limitations in an otherwise valid assignment agreement do not invalidate it").

v. Int'l Gourmet Rests. of Am., Inc., 838 F.2d 642, 646 (2d Cir. 1988) (same); Premier Dental Prods., 794 F.2d at 853 (transfer of goodwill is necessary to transfer ownership of a trademark). "A trademark symbolizes the public's confidence or 'goodwill' in a particular product. However, it is no more than that, and is insignificant if separated from that confidence. Therefore, a trademark 'is not the subject of property except in connection with an existing business.'" Id. at 853 (quoting United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97 (1918)) (footnote omitted).

EAI points to several perceived distinctions between Premier Dental Prods. and the facts of this case to suggest that goodwill did not transfer under the Assignment Agreement. EAI notes that the assignee in Premier Dental Prods. was not created expressly for the purpose of marketing goods bearing the trademark at issue, and that the assignee was the exclusive distributor of such goods in the United States, whereas here VNA was created pursuant to the 1992 Agreement, and VNA competed with EAI prior to the Assignment Agreement. Moreover, EAI points out that it has been distributing Vittoria-branded bicycle tires in the United States for a longer period of time than VNA, and that EAI never obtained its products directly from VNA.

The purpose for requiring transfer of goodwill along with the transfer of the trade or service mark is to ensure that consumers receive accurate information

- 11 -

about the product or service associated with the mark. Sugar Busters LLC v. Brennan, 177 F.3d 258, 265 (5th Cir. 1999) ("The purpose of the rule prohibiting the sale or assignment of a trademark in gross is to prevent a consumer from being misled or confused as to the source and nature of the goods or service that he or she acquires."); E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1289 (9th Cir. 1992); Patterson Labs., Inc. v. Roman Cleanser Co. (In re Roman Cleanser Co.), 802 F.2d 207, 208-09 (6th Cir. 1986); Marshak v. Green, 746 F.2d 927, 929 (2d Cir. 1984).

Transfer of assets is not a sine qua non for transferring the goodwill associated with a trademark. See Sands, Taylor & Wood Co., 978 F.2d at 956 (stating that the "transfer of a mark need not be accompanied by the transfer of any physical or tangible assets in order to be valid"). The Restatement (Third) of Unfair Competition explains:

> [C]ourts now evaluate each assignment in light of the circumstances of the particular case, including both the terms of the transfer and the nature of the assignee's subsequent use. Recent decisions recognize that the central enquiry is whether the use of the mark by the assignee is likely to confuse prospective purchasers by departing from the expectations created by the presence of the trademark. The traditional requirement of accompanying transfer of goodwill can thus be understood as requiring that the assignment not disrupt the existing significance of the mark to consumers.

Restatement (Third) of Unfair Competition § 34, cmt. b (1995); see also J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 18:24

- 12 -

(4th ed. 1997). "The courts have upheld such assignments if they find that the assignee is producing a product or performing a service substantially similar to that of the assignor and that the consumers would not be deceived or harmed." Marshak, 746 F.2d at 930 (citations omitted); see also Sugar Busters, 177 F.3d at 266; Defiance Button Mach. Co. v. C&C Metal Prods. Corp., 759 F.2d 1053, 1059 (2d Cir. 1985) ("[A] trademark may be validly transferred without the simultaneous transfer of any tangible assets, as long as the recipient continues to produce goods of the same quality and nature previously associated with the mark." (citation omitted)); VISA U.S.A., Inc. v. Birmingham Trust Nat'l Bank, 696 F.2d 1371, 1376 (Fed. Cir. 1982) ("[T]ransfer of goodwill requires only that the service be sufficiently similar to prevent consumers of the service offered under the mark from being misled from established associations with the mark." (quotations omitted)).

In this case, VNA's actions both prior and subsequent to the transfer of the Vittoria trademark were calculated to maintain continuity in the use of the mark and the public's perceptions of the products associated with it. The record shows that VNA took significant steps throughout its use of the trademark to ensure that the mark continued to signify high-end racing tires for bicycles. VNA placed advertisements, sponsored professional athletes, attended trade shows, and developed a marketing network consisting of 25 to 30 sales representatives who

promoted these tires to approximately 6,000 bicycle dealers. Significantly, EAI has never alleged any sort of disruption in the kind or quality of the products associated with the Vittoria trademark, and we could find no evidence of any such break upon our independent review of the record. We therefore hold the Assignment Agreement constitutes a valid transfer of the rights to use the Vittoria trademark in the United States.

C.     The Common Control Exception

We next consider whether, in spite of a valid transfer of the trademark from Vittoria Italy to VNA, a regulatory exception to the Act removes VNA from the scope of its gray market protections. The regulation in question, 19 C.F.R. § 133.23(d)(1), reads, in relevant part:

> Gray market goods subject to the restrictions of this section shall be detained for 30 days from the date on which the goods are presented for Customs examination, to permit the importer to establish that any of the following exceptions . . . are applicable:
>
> (1) The trademark or trade name was applied under the authority of a . . . trade name owner who is the same as the U.S. owner, a parent or subsidiary of the U.S. owner, or a party otherwise subject to common ownership or control with the U.S. owner (in an instance covered by § 133.2(d) and 133.12(d) of this part).

EAI does not allege that VNA is the same as Vittoria Italy, is a parent or subsidiary of Vittoria Italy, or that it is subject to common ownership with Vittoria Italy. Rather, EAI argues that the evidence is sufficient to show common control of the two companies or control of VNA by Vittoria Italy.

- 14 -

For the purpose of applying § 133.23(d)(1), common control is defined as "effective control in policy and operations and is not necessarily synonymous with common ownership."  19 C.F.R. § 133.2(d)(2); see also United States v. Eighty-Three Rolex Watches, 992 F.2d 508, 516 (5th Cir. 1993) ("the ties that bind two entities with a profitable business relationship" do not constitute the required "effective control"); United States v. Eighty-Nine Bottles of "Eau de Joy", 797 F.2d 767, 772 (9th Cir. 1986) (suggesting that "common control" required "common ownership, operations or management.").  "[A] close and profitable business relationship" does not amount to common control.  Eighty-Three Rolex Watches, 992 F.2d at 515.  Rather, "[t]he regulatory language makes clear that it contemplates the sort of control that a parent corporation would exercise over a subsidiary or that a common owner might exercise over both organizations."  Eighty-Nine Bottles of "Eau de Joy", 797 F.2d at 771.

In this case, EAI asserts genuine questions of material fact exist with respect to the following allegations: (1) VNA and Vittoria Italy work in concert to design, develop and distribute Vittoria products; (2) VNA and Vittoria Italy make joint decisions as to "present and future product ranges"; (3) Vittoria Italy sells Vittoria-branded products directly to original equipment manufacturers in the United States; (4) Vittoria Italy pays a significant percentage of VNA's advertising budget and exercises some measure of control over VNA's marketing

- 15 -

of Vittoria products; (5) Vittoria Italy determines which product lines VNA is allowed to market in the United States; (6) Vittoria Italy reimburses VNA for nearly all of its liability for warranty claims on Vittoria products; (7) Vittoria Italy's catalog lists VNA as its "U.S. distributor"; and (8) the president and CEO of Vittoria Italy, Rudie Campagne ("Campagne"), makes decisions about employees of VNA as well as a sister company of VNA called XLM. Although these allegations show a "close and profitable business relationship," they fall short of establishing "common control" as defined in 19 C.F.R. § 133.2(d).

For example, allegations of joint decision making and cooperative efforts to develop and market products for the United States at most give rise to an inference that a close business relationship exists between VNA and Vittoria Italy. Indeed, such cooperative planning is required by the 1992 Agreement. (Aplt. App. at 39, ¶ 4.2.) Similarly, Vittoria Italy's reimbursing VNA for warranty liabilities does not give rise to an inference of control. While Vittoria Italy provides funding to support VNA's advertising, Vittoria Italy has no legal control over how those funds are spent. EAI's evidence that Vittoria Italy controls VNA's employment decisions apparently consists of a single e-mail from Campagne expressing his disapproval with VNA's management team and a "strong request" that it rehire a retired former officer of the company, which it

did. Again, this is not evidence of control, but only evidence of VNA's understandable desire to preserve a good business relationship with Vittoria Italy.

VNA is referred to as the U.S. distributor for the "Vittoria Group" in the catalog. However, deposition testimony by VNA executives explains that the term "Vittoria Group" is a collective, descriptive term used to refer to several independent companies, each of which is somehow engaged in the production or sale of Vittoria products. In contrast, EAI has offered no evidence of any legal authority enabling Vittoria Italy or any other party to control VNA's actions.

EAI relies on a concurrence by Justice Brennan in K Mart Corp. v. Cartier, Inc., discussing the legislative history behind the Act and concluding that "Congress did not intend to extend § 526's protections to affiliates of foreign manufacturers." 486 U.S. at 297. Justice Brennan observed that Congress's intent was to protect only domestic interests, and that "[t]he barriers that Congress erected . . . . are fragile barriers indeed if a foreign manufacturer might bypass them by the simple device of incorporating a shell domestic subsidiary and transferring to it a single asset – the United States trademark." Id. at 298.

We believe EAI reads too much into Justice Brennan's concurrence by attempting to apply the descriptive word "affiliate" to this context. First, extending the common control exception to companies who merely work together under cooperative contractual arrangements would not advance the two policy

considerations for § 526 that Justice Brennan identified in his concurrence.  The first of these is that independent U.S. entities which acquire rights to trademarks have significantly greater investment-backed expectations at stake than subsidiaries or other "affiliates" of foreign manufacturers.  486 U.S. at 302.  However, close but independent business allies are also likely to have invested significant financial and human capital into their endeavors, as the record shows to be the case here.  Second, Justice Brennan contrasted independent U.S. trademark holders with those covered by the common control exception because, in the latter case, the foreign manufacturer can protect its U.S. marketing efforts simply by restricting who can purchase the product and where those customers can subsequently export it.  Id.  The same cannot be said of U.S. trademark owners associated with foreign manufacturers only by virtue of a contract or other cooperative arrangement rather than by "common control."  While close business allies may hope to persuade their partners to adopt such controls, without more they are not able to force an unwilling foreign manufacturer to protect them from gray market importers.  Such is the case here.

Finally, we find no evidence that VNA and Vittoria Italy have engaged in fraud or otherwise have attempted to subvert the limits Congress placed on § 526's protections.  Although EAI alleges that VNA was created "at the behest" of Vittoria Italy, it points to no evidence that the agreement leading to the

creation of VNA was anything but an arm's-length transaction between the Hibdon Tire Center and Vittoria Italy. Further, there is no evidence that Vittoria Italy has any legal authority to control VNA's actions, and no evidence of other connections between them such as interlocking officers or directors.

In sum, we hold that EAI has failed to demonstrate the existence of genuine questions of material fact sufficient to implicate the common control exception to the Act.

D.    Denial of Leave to File Surrebuttal

EAI's final assignment of error flows from the district court's grant of VNA's motion to file a reply brief in support of its motion for partial summary judgment to respond to points raised in EAI's answer brief to the motion. VNA's reply brief incorporated by reference an earlier submission in the case, and it contained references to some evidence that was not specifically referenced in VNA's initial motion for partial summary judgment, although the evidence was previously before the court. Finally, VNA's reply brief contained evidence pertaining to its registration of its trademark with the U.S. Customs Service. EAI moved unsuccessfully to file a surrebuttal to respond to the new evidence not specifically discussed in VNA's initial summary judgment motion.

On appeal, we review the district court's decision denying EAI's request to file a surrebuttal for abuse of discretion. See Beaird v. Seagate Tech., Inc., 145

- 19 -

F.3d 1159, 1164-65 (10th Cir. 1998). "Under the abuse of discretion standard, a trial court's decision will not be disturbed unless we have a definite and firm conviction that the lower court has made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Id. at 1164 (internal quotation and alteration omitted).

EAI does not allege that VNA's reply brief contained any new legal arguments in favor of summary judgment. Further, most of the alleged new factual evidence in VNA's reply brief was either not relied upon by the district court or was cumulative of other evidence that was already before the court. EAI does not show why it could not have included in its initial responsive brief any further factual evidence that would have been helpful to its position. More importantly, EAI does not even now clearly set forth what additional evidence it would have included had it been allowed to file a surrebuttal brief nor does it explain how such new evidence, if any, would have defeated VNA's motion for summary judgment. Accordingly, we find no reversible error in this regard.

### III. CONCLUSION

For the reasons set forth herein, we AFFIRM the grant of partial summary judgment for VNA.