# STATE OF MICHIGAN

# COURT OF APPEALS

TRJ & E PROPERTIES, LLC,

  Petitioner-Appellee,

v

CITY OF LANSING,

  Respondent-Appellant.

FOR PUBLICATION
April 17, 2018
9:20 a.m.

No. 338992
Tax Tribunal
LC No. 16-000408-TT

Before: O'BRIEN, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Respondent, City of Lansing, appeals by right an order of the Michigan Tax Tribunal granting summary disposition in favor of petitioner, TRJ & E Properties, LLC, and concluding that respondent had erroneously uncapped the taxable value of property that had been transferred to petitioner by a commonly controlled entity, TRJ Properties, Inc. (TRJ Properties). We affirm.

In 2015, TRJ Properties owned an apartment building and transferred its interest in that property to petitioner. The ownership interests in petitioner are as follows: 25% by Tony Farida, 25% by Ricky Farida, 25% by Jeffrey Farida, and 25% by Eric Farida. TRJ Properties was owned as follows: 40% by Hamid Farida, 20% by Tony Farida, 20% by Ricky Farida, and 20% by Jeffrey Farida. Hamid is the father of Tony, Ricky, Jeffrey, and Eric. Petitioner's operating agreement provides that, subject to specific exceptions, "the affirmative vote of a majority of the Shares of all Members entitled to vote on such a matter is required."

Respondent determined that the property transfer was an uncapping event under MCL 211.27a(3), and increased the property's taxable value from $468,746 to $535,200. Petitioner petitioned the Tax Tribunal to reverse respondent's decision uncapping the property's taxable value, asserting that the transfer was between commonly controlled entities and thus exempt from uncapping under MCL 211.27a(7)(m).

Respondent moved for summary disposition, asserting that the facts were not in dispute and respondent was entitled to judgment as a matter of law. Respondent argued that the State Tax Commission (STC) had issued Revenue Administrative Bulletin (RAB) 1989-48, which provides that common control only exists when ownership is identical, or when the same five or fewer people have an 80% interest in both properties. Respondent argued that an uncapping event occurred in this case because the same five or fewer people only had a 60% shared interest in the properties.

-1-

Petitioner also moved for summary disposition. Petitioner argued that TRJ Properties and petitioner were commonly controlled because the same siblings owned a controlling interest in each entity, where a controlling interest was 50% or more of the combined voting power in each entity. Petitioner alternatively argued that common control existed under RAB 2010-1 because a parent indirectly controlled, through his or her children, both entities. Because Hamid was the father of all the siblings who had an ownership interest in each entity, Hamid constructively controlled 100% of both entities. Accordingly, no uncapping event occurred.

The Tax Tribunal determined that the parties had effectively moved for summary disposition under MCR 2.116(C)(10). The Tax Tribunal noted that respondent was arguing that the common control rules of RAB 1989-48 applied, but not the constructive ownership rules in RAB 2010-1. It rejected respondent's argument that RAB 1989-48 applied and declined to adopt RAB 1989-48's requirements because "[t]o apply such a rule would be to add requirements not present in the statute, and thus exercising legislative power without authority, by creating or changing the laws enacted by the Legislature." Instead, the Tax Tribunal applied the plain language of MCL 211.27a which provides that a transfer of ownership uncaps a property's taxable value for the following tax year, but a transfer of ownership does not include "[a] transfer of real property . . . among . . . other legal entities if the entities involved are commonly controlled." MCL 211.27a(3), 211.27a(7)(m).

In this case, the Tax Tribunal noted, Tony, Ricky, and Jeffrey's 60% interest in TRJ Properties controlled that entity, and Tony, Ricky, and Jeffrey's 75% interest in petitioner also controlled that entity. Petitioner's Articles of Organization showed that "a mere majority of shares of all members is required to act." Accordingly, both entities were controlled by three of the four Farida brothers, and thus the entities were commonly controlled. Therefore, MCL 211.27a(7)(m) applied and "the property's taxable value remains capped." This appeal followed.

Respondent argues that the Tax Tribunal erred when it determined that these two entities were commonly controlled for the purposes of MCL 211.27a(7)(m) because RAB 1989-48 provides that common control requires 80% of the combined voting power be shared between two entities and, in this case, the combined voting power of the people who controlled the two entities was 60% and 75%, respectively. We disagree.

This Court reviews de novo a lower tribunal's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A party is entitled to summary disposition under MCR 2.116(C)(10)[1] if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Id.* at 120.

This Court's review of a decision by the Tax Tribunal is limited. *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012). When a party does not dispute the facts or allege fraud, this Court reviews whether the tribunal "made an error of law or adopted a

---

[1] Generally, the Tax Tribunal's rules of procedure govern the proceedings before the Tax Tribunal, but if no applicable rule exists, the Michigan Court Rules apply. *Signature Villas, LLC v City of Ann Arbor*, 269 Mich App 694, 705; 714 NW2d 392 (2006).

wrong principle." *Id*. at 527-528. This Court reviews de novo the interpretation and application of tax statutes. *Id*. at 528. If the plain and ordinary meaning of a statute's language is clear, this Court will not engage in judicial construction. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 141; 783 NW2d 133 (2010). When interpreting a statute, this Court's goal is to give effect to the intent of the Legislature. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). The language of the statute itself is the primary indicator of the Legislature's intent. *Id*.

The General Property Tax Act (GPTA) provides for the taxation of real and personal property. MCL 211.1 *et seq*. Generally, a property's taxable value is determined by the lesser of (1) the property's current state equalized value, or (2) the property's taxable value in the previous year, minus losses, multiplied by 1.05 or the inflation rate, plus all additions. MCL 211.27a(2). This limitation, which is based on Const 1963, art 9, § 3, effectively caps increases on a property's taxable value so that "any yearly increase in taxable value is limited to either the rate of inflation or 5 percent, whichever is less." *Mich Props*, 491 Mich at 528-529. "[T]he property's taxable value is uncapped when the property is transferred." *Id*. at 529; see also MCL 211.27a(3).

However, there are several exceptions under which a transfer of ownership will not uncap the property's taxable value. *Detroit Lions, Inc v City of Dearborn*, 302 Mich App 676, 694; 840 NW2d 168 (2013). One of these exceptions is "[a] transfer of real property . . . among corporations . . . or other legal entities if the entities involved are commonly controlled." MCL 211.27a(7)(m). This is the exception that the parties dispute in this case—specifically, the meaning of the phrase "commonly controlled," and what percentage of common ownership renders two entities commonly controlled.

This Court has only addressed common control in two published decisions, and neither decision determined that a specific percentage of ownership constitutes common control. In *Sebastian J Mancuso Family Trust v City of Charlevoix*, 300 Mich App 1, 7-8; 831 NW2d 907 (2013), this Court held that two trusts were not commonly controlled when they had the same trustees. This Court reasoned that the common control exception[2] did not apply because trustees only manage the property, but the statute applies when there is a change in the ownership of the property. *Id*. at 7. Accordingly, the common control exception does not apply to a transfer of property from one owner to a new owner even if the trustees of both owners are the same. *Id*. at 8. And in *Detroit Lions*, 302 Mich App at 694, this Court concluded that two entities—Ford Land and WCF Land—were not commonly controlled because, while William Clay Ford, Sr., owned WCF Land, "it is undisputed that Ford Land . . . is not under the control of Mr. Ford." Neither case addressed what amount of control constitutes common control.

We turn to principles of statutory interpretation to determine the meaning of "commonly controlled." This Court generally interprets statutes with consideration of "[t]he fair and natural

---

[2] At that time, the common control exception was located at MCL 211.21a(7)(*l*), but the statutory language has not changed. See 2015 PA 243 (adding subdivision (d) and renumbering the subsequent sections).

import of the terms employed, in view of the subject matter of the law[.]" *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 274; 744 NW2d 10 (2007) (quotation marks and citation omitted). This Court should read phrases "in the context of the entire legislative scheme." *Madugula v Taub*, 496 Mich 685, 696; 853 NW2d 75 (2014). While the GPTA does not define "commonly controlled" in MCL 211.27a or elsewhere, it does define "under common control with" as it relates to personal property taxation exemptions. MCL 211.9o(7) provides, in pertinent part:

> As used in this section:
>
> * * *
>
> (b) "Control", "controlled by", and "under common control with" mean the possession of the power to direct or cause the direction of the management and policies of a related entity, directly or indirectly, whether derived from a management position, official office, or corporate office held by an individual; by an ownership interest, beneficial interest, or equitable interest; or by contractual agreement or other similar arrangement. . . .[3]

While we recognize that this definition does not expressly or directly apply to MCL 211.27a(7)(m), it is a reliable and persuasive indication of the Legislature's intent and allows consistency throughout the GPTA's legislative scheme. See *Madugula*, 496 Mich at 696; *Sun Valley Foods Co*, 460 Mich at 236. And this definition is particularly appropriate because it recognizes that different percentages of control may be necessary to direct the management of different corporate entities. For instance, if an entity requires a supermajority to undertake any action, a mere majority of common shareholders would not be sufficient to constitute common control of the entities under this definition.

Further, this definition focuses on the actual control of the business on the basis of its corporate structure. Numerous federal decisions tie the meaning of "common control" to the actual control of the business. See, e.g., *Chao v A-One Med Servs, Inc*, 346 F3d 908, 915 (CA 9, 2003); *Vittoria North America, LLC v Euro-Asia Imports Inc*, 278 F3d 1076, 1084 (CA 10, 2001). This Court may consider foreign authority as persuasive authority when deciding issues of state law. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221 n 6; 761 NW2d 293

---

[3] The remainder of MCL 211.9o(7)(b) contains additional language:

> There is a rebuttable presumption that control exists if any person, directly or indirectly, owns, controls, or holds the power to vote, directly or by proxy, 10% or more of the ownership interest of any other person or has contributed more than 10% of the capital of the other person. Indirect ownership includes ownership through attribution or through 1 or more intermediary entities.

It is not necessary to address any rebuttable presumption of common control in this case because a mere majority of the shares of all members was required to act, and Tony, Ricky, and Jeffrey controlled more than that majority of shares in both entities.

-4-

(2008). As a practical matter, no single percentage—whether the 80% that respondent suggests, or the more than 50% that petitioner suggests—will apply universally to diverse corporate structures. For this reason, we decline to adopt any specific percentage as the definition of common control. Moreover, if the Legislature had intended such a particular requirement, it could have specifically defined the phrase "commonly controlled" accordingly.

In this case, the Tax Tribunal did not err when it determined that TJR Properties and petitioner were commonly controlled. Tony, Ricky, and Jeffrey controlled 60% of TRJ Properties, and 75% of petitioner. According to petitioner's operating agreement, a mere majority is required for it to act. While petitioner did not provide an operating agreement for TRJ Properties, petitioner repeatedly asserted that only 50% of the combined voting power of TRJ Properties was required for it to act and respondent never disputed this fact. Therefore, both entities were actually controlled by Tony, Ricky, and Jeffrey. Accordingly, the Tax Tribunal did not commit an error of law or adopt a wrong principle when it determined that TRJ Properties and petitioner were commonly controlled under MCL 211.27a(7)(m).

In reaching our conclusion, we also reject respondent's argument that the Tax Tribunal was required to follow the STC's transfer of ownership guidelines and related revenue administrative bulletins, including RAB 1989-48, to determine whether the transfer was excluded from uncapping under MCL 211.27a. As the Tax Tribunal held, it is not bound to follow STC guidelines that impose requirements not present within the statute's plain language. Further, the STC guidelines did not provide any interpretation of MCL 211.27a(7)(m), and thus the Tax Tribunal properly applied the general rules of statutory construction to the statute.

It is well established that "agency interpretations are entitled to respectful consideration, but they are not binding on courts and cannot conflict with the plain meaning of the statute." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 117-118; 754 NW2d 259 (2008). "[A]gencies cannot exercise legislative power by creating law or changing the laws enacted by the Legislature." *Id*. at 98. An agency's interpretation may be helpful "when the law is 'doubtful or obscure.' " *Id*. at 103 (citation omitted). However, agency interpretations of statutes are not entitled to deference when they conflict with the language of a statute. *Id*. at 108.

In *Rovas*, the Michigan Supreme Court was considering the meaning of the word "false" in MCL 484.2502(1)(A). *Id*. at 111-112. The Public Service Commission (PSC) had determined that the statute penalized factually inaccurate statements. *Id*. at 112. However, the PSC did not analyze the statutory language or provide a rationale for its conclusion that the word "false" meant untrue or incorrect. *Id*. at 113. Accordingly, the PSC had not provided any construction of the statute, and there was no construction for a reviewing court to respectfully consider. *Id*. Because the PSC had failed to offer any construction, the Supreme Court had to provide "an interpretation of the plain language of the statute." *Id*.

RAB 1989-48 stated that its purpose was "to define 'entities under common control' for single business tax purposes." RAB 1989-48, p 1. In "Types of Controlled Groups," RAB 1989-48 discusses both "Parent-Subsidiary Group of Entities" and "Brother-Sister Group of Entities" as types of entities under common control. RAB 1989-48, pp 1-2. For the purposes of parent-subsidiary groups, RAB 1989-48 provides that groups are under common control if "[a]

-5-

controlling interest in each of the organizations . . . is owned (directly and indirectly) by one or more of the other organizations," with "controlling interest" defined as follows:

A controlling interest means:

1. Corporations: 80 percent of total combined voting power of all classes of stock entitled to vote, OR, at least 80 percent of the total value of the shares of all classes of stock of such corporation.

2. Trusts and estates: ownership of an actuarial interest of at least 80 percent of such trust or estate. [Actuarial interest defined: IRC #1.414(c)-2 (b)(2)(ii)]

3. Partnerships: 80 percent of the profits or capital.

4. Sole proprietorships: ownership of such proprietorship. [RAB 1989-48, pp 1-2.]

For the purposes of brother-sister groups, RAB 1989-48 provides:

The term "brother-sister group of entities under common control" means two or more entities engaged in a business activity, providing the following exists:

1. The same five or fewer persons who are individuals, estates or trusts own (directly and indirectly) a controlling interest in each entity (see page 6 for constructive ownership rules), and

2. Taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such entity, such persons are in effective control of each entity. The five or fewer persons, whose ownership is considered for purposes of the controlling interest requirement for each organization, must be the same persons whose ownership is considered for purposes of the effective control requirement. [RAB 1989-48, p 2.]

For brother-sister groups, the examples provide that common ownership exists when "combined identical ownership . . . is greater than 50%." RAB 1989-48, Example 5, p 4.

In this case, like in *Rovas*, RAB 1989-48 provides no statutory construction and thus there was nothing for the Tax Tribunal to respectfully consider. Therefore, the Tax Tribunal did not err by interpreting the plain language of MCL 211.27a(7)(m) and applying general rules of statutory construction to that subparagraph. Accordingly, the Tax Tribunal properly granted

summary disposition in favor of petitioner and concluded that respondent had erroneously uncapped the taxable value of petitioner's property under MCL 211.27a.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens