*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN STATE POLICE TROOPERS
ASSOCIATION, INC.,

UNPUBLISHED
July 16, 2020

Plaintiff-Appellant,

v

No. 350863
Court of Claims
LC No. 19-000030-MK

DEPARTMENT OF STATE POLICE,

Defendant-Appellee.

Before: CAVANAGH, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

In this action brought under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, plaintiff, Michigan State Police Troopers Association, Inc. (MSPTA), appeals as of right the opinion and order of the Court of Claims granting summary disposition in favor of defendant, Michigan Department of State Police (MSP). We affirm.

## I. FACTS

This claim arose after defendant released a copy of an internal affairs investigation report in response to a FOIA request at some point prior to June 2018. According to plaintiff's complaint, this violated the parties' Collective Bargaining Agreement (CBA), which restricts access to an employee's personnel file without the employee's express written permission and requires investigation records to be maintained and handled in accordance with the Bullard-Plawecki Employee Right to Know Act (ERKA), MCL 423.501 *et seq*.

Plaintiff initially filed a grievance, which defendant denied. Thereafter, plaintiff filed a three-count complaint for declaratory relief seeking to enjoin defendant from releasing any *future* internal affairs investigation reports. More specifically, Count I alleged that any report created as a result of an internal affairs investigation is a record that must be kept in a separate, "confidential" file under ERKA, MCL 423.509(2). Thus, these "confidential" records constitute records that are exempt from disclosure by that statute, as set forth under MCL 15.243(1)(d) of the FOIA. Accordingly, internal affairs investigation records are necessarily exempt from disclosure under the FOIA. Contrary to the dissenting opinion, Count I did not claim that the specific internal affairs

-1-

investigation report "should not have been given to the Free Press." Rather, Count I specifically sought a declaration that all future internal affairs investigation reports are necessarily exempt from disclosure, period.[1] In other words, no discretion should be involved at all; rather, as a blanket rule, internal affairs investigation reports may not be disclosed in the future. As the Court of Claims correctly summarized: "Plaintiff wants the Court to declare that all reports created by defendant following internal investigations, regardless of the circumstances attendant thereto, are exempt from disclosure under FOIA and ERKA."

In Count II, plaintiff similarly asked the court to declare—as a blanket rule—that all future internal affairs investigation reports are *presumptively exempt* from disclosure under MCL 15.243(l)(s)(*ix*) of the FOIA, which provides an exemption for records that would "disclose personnel records of law enforcement agencies," "[u]nless the public interest in disclosure outweighs the public interest in nondisclosure." And plaintiff requested the court to declare a blanket, non-discretionary rule that "the public interest in disclosure of the unfounded internal investigation reports of Defendant is outweighed by the public interest in nondisclosure of those unfounded internal investigation reports." Plaintiff further requested the court to "[e]njoin Defendant from releasing any internal affairs investigations reports in the future."[2] As the Court of Claims correctly summarized: "Plaintiff asks the Court to enjoin defendant from releasing any internal affairs investigation reports pursuant to FOIA in the future."

Lastly, Count III, pleaded as an alternative basis for relief, asked the court to declare that the Disclosures by Law Enforcement Officers Act (DLEOA), MCL 15.395 *et seq*., prevents disclosure of internal affairs investigation reports because the DLEOA renders "involuntary statements" by law enforcement officers confidential communications that are not open to public inspection absent written consent from the officer who made the statement. Plaintiff alleged that, with respect to the information that was previously released, defendant "may or may not have redacted said involuntary statements from law enforcement officers, or the information received or derived therefrom," before providing copies of the internal affairs investigation reports in response to the FOIA request. Plaintiff requested the court to declare that involuntary statements by law enforcement officers which are confidential under the DLEOA are exempt from disclosure under MCL 15.243(1)(d), enjoin the release in the future of internal affairs investigation reports containing such involuntary statements, and require the redaction of such information where possible in records to be released in the future.

In lieu of an answer, defendant filed a motion to dismiss plaintiff's complaint on several grounds, including that plaintiff failed to exhaust its administrative remedies by submitting its

---

[1] The heading for Count I in plaintiff's first amended complaint states: "ACTION FOR RELIEF DECLARING THAT DEFENDANT'S INTERNAL AFFAIRS INVESTIGATION REPORTS ARE EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT; MCL 15.243(1)(d), AND THE EMPLOYEE RIGHT TO KNOW ACT; MCL 423.509(2)."

[2] The heading for Count II of plaintiff's first amended complaint states: "ACTION FOR RELIEF DECLARING THAT DEFENDANT'S INTERNAL AFFAIRS INVESTIGATION REPORTS ARE EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT; MCL 15.243(1)(s)(ix)."

claim that records were disclosed in violation of the CBA to arbitration, as required by the CBA, before wrongfully commencing this court action. Defendant also argued that plaintiff lacked standing to litigate a claim under the FOIA because the FOIA does not even prohibit the disclosure of records that fall within an exemption; thus, there is no "actual controversy." Further, plaintiff could not establish any violations because the exemptions relied upon by plaintiff were not violated; rather, defendant properly separated the exempt and nonexempt information and only released the nonexempt information and/or released information that was properly redacted or which weighed in favor of disclosure for the public gain. Defendant also attached an affidavit executed by MSP's FOIA Coordinator Lori Hinkley, outlining MSP's response to the FOIA request at issue in the grievance.

Plaintiff responded that it sought declaratory relief "to enforce statutory provisions which protect the confidentiality of law enforcement internal investigations, and prevent their release in the future." Plaintiff added that even if the internal investigation reports were not exempt from disclosure, "certain information contained within them must, alternatively, be protected." Plaintiff asserted that the Court of Claims had jurisdiction and that plaintiff could assert the claim as a "reverse FOIA"[3] action. Plaintiff further asserted that it was not required to exhaust the arbitration remedy within the CBA because an arbitrator did not have the authority to interpret the relevant statutes. Plaintiff once again argued that internal affairs investigation reports were exempt under the ERKA and the FOIA. Alternatively, even if internal affairs investigation reports were not exempt, portions of the reports were barred from release under the DLEOA. In support of these propositions, plaintiff submitted the affidavit of MSPTA President Nathan Johnson who indicated that, during the grievance process, the parties had agreed that arbitration would not resolve the legal issues presented.

In September 2019, the Court of Claims issued an opinion and order granting defendant's motion for summary disposition under MCR 2.116(C)(8) and (10). The court cited *Tobin v Mich Civil Serv Comm*, 416 Mich 661, 667, 670; 331 NW2d 184 (1982), as a basis for dismissal of Count II under MCR 2.116(C)(8) because "a plaintiff in a so-called 'reverse' FOIA action will not prevail by simply arguing that the FOIA itself prohibits disclosure." That is so because no exemption of FOIA *prohibits* disclosure, although nondisclosure is *authorized* when an exemption is applicable. See MCL 15.243(1) (stating, "A public body may exempt from disclosure . . . ."). Additionally, the court dismissed Counts I and III "because there is no live controversy before the Court with respect to [those] claims." That is, plaintiff was not contesting the disclosure that already occurred; rather, plaintiff was seeking to prevent the disclosure of internal affairs investigation reports in the future. Because such a request may or may not occur and because defendant may or may not disclose any such reports in the future—redacted or not, the court held that the issue was not ripe for review. Accordingly, defendant's motion for summary disposition was granted. This appeal followed.

---

[3] A reverse FOIA action seeks to prevent disclosure of public records under the FOIA. See *Bradley v Saranac Community Sch Bd of Ed*, 455 Mich 285, 290; 565 NW2d 650 (1997), mod by *Mich Federation of Teachers & Sch Related Personnel, AFT, AFL-CIO v Univ of Mich*, 481 Mich 657, 664; 753 NW2d 28 (2008).

## II. STANDARDS OF REVIEW

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). "Questions regarding ripeness are also reviewed de novo." *King v Mich State Police Dep't*, 303 Mich App 162, 188; 841 NW2d 914 (2013). A motion brought under MCR 2.116(C)(8), which tests the legal sufficiency of the complaint, should be granted only where the complaint is so legally deficient that recovery would be impossible even if all well-pleaded facts were true and construed in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Stone v Auto-Owners Ins Co*, 307 Mich App 169, 173; 858 NW2d 765 (2014). The pleadings, affidavits, depositions, and other documentary evidence is reviewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists for the jury to decide. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). If reasonable minds could differ on an issue, a genuine issue of material fact exists. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). Summary disposition for lack of ripeness is properly considered under MCR 2.116(C)(10). *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 543; 904 NW2d 192 (2017).

FOIA cases involving issues of statutory interpretation are also reviewed de novo. *Mich Federation of Teachers & Sch Related Personnel, AFT, AFL-CIO v Univ of Mich*, 481 Mich 657, 664; 753 NW2d 28 (2008). The primary goal of statutory interpretation is to give effect to the Legislature's intent. *TRJ & E Props, LLC v Lansing*, 323 Mich App 664, 670; 919 NW2d 795 (2018). "The language of the statute itself is the primary indicator of the Legislature's intent." *Id*. When the language of the statute is clear and unambiguous, judicial construction is not permitted, and this Court must give the words their plain and ordinary meaning. *Mich Federation of Teachers*, 481 Mich at 664.

"In order to maintain an action for declaratory judgment, a plaintiff must demonstrate that an 'actual controversy' exists between the parties." *Gyarmati v Bielfield*, 245 Mich App 602, 605; 629 NW2d 93 (2001); see also MCR 2.605(A).

> Generally, an actual controversy exists where a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights. What is essential to an "actual controversy" under the declaratory judgment rule is that plaintiff plead and prove facts which indicate an adverse interest necessitating a sharpening of the issues raised. Generally, where the injury sought to be prevented is merely hypothetical, a case of actual controversy does not exist. [*Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 55; 620 NW2d 546 (2000) (citations and quotation marks omitted).]

Accordingly, "[w]hen there is no actual controversy, the court lacks jurisdiction to issue a declaratory judgment." *Van Buren Charter Twp* 319 Mich App at 545.

III. ANALYSIS

Plaintiff argues that the Court of Claims erred by dismissing Counts I and III of the amended complaint on the basis that no actual controversy exists because declaratory relief was necessary to guide how the parties should handle future requests. In other words, plaintiff claimed to seek a "sharpening of the issues raised." We disagree.

Plaintiff first argues that the trial court erred by finding no actual controversy exists because the parties agreed during the grievance process that legal action was necessary to determine the legal implications related to the FOIA. In support of this proposition, plaintiff indicates that Johnson's assertion of this agreement in his affidavit was unrebutted. Although defendant may not have specifically denied this assertion, defendant's motion to dismiss—as well as arguments on appeal—clearly indicate that defendant disputed the merits of plaintiff's assertions and conclusions. Nonetheless, plaintiff cites no authority, and we are unable to locate any authority, that would allow the Court of Claims to grant declaratory relief on the basis of any such agreement between the parties.

Plaintiff also argues that, although the specific internal affairs investigation reports were already disclosed, defendant responded to plaintiff's grievance in a manner that indicated it would continue to release such reports in the future; thus, this is not a hypothetical situation. To the contrary, defendant argues that the Court of Claims properly dismissed Counts I and III on ripeness grounds because plaintiff's claims are premised on contingent and speculative events. That is, this action presents merely a hypothetical controversy because no "live" FOIA request was pending. We agree with defendant and the Court of Claims.

Count I of plaintiff's amended complaint sought a declaration that, in the future, all internal affairs investigation reports are necessarily exempt from disclosure under FOIA and ERKA. Similarly, Count III of plaintiff's amended complaint sought a declaration that, in the future, all internal affairs investigation reports are necessarily exempt from disclosure under the DLEOA. Plaintiff's claims were premised on an anticipated, future legal controversy; therefore, plaintiff was requesting an advisory opinion—in other words, advice—on the matter because no actual, pending FOIA request was being contested. Generally, an "actual controversy" exists in the present tense and cannot be an "anticipated controversy." The dissenting judge believes that the ongoing grievance process constitutes the requisite "actual controversy" but the grievance asserted "a violation of Article 7, Section 4 of the collective bargaining agreement." Article 7, Section 4 of the CBA pertains to personnel files and states, in relevant part: "The Bullard-Plawecki Employee Right to Know Act" (1978 PA 397) shall be applicable to and govern any disputes with reference to maintenance of personnel files, and access thereto." The remedy sought by the grievance was that defendant "discontinues releasing details of internal investigation allegations made against MSPTA members." Ultimately, the grievance was denied on the ground that the requested remedy would require defendant to violate Michigan statutes, including the FOIA.

Instead of proceeding to arbitration to resolve plaintiff's specific grievance claim—that the CBA was breached—plaintiff filed this action seeking to have the Court of Claims adjudicate a very different issue, which was to declare that internal affairs investigation reports can never be disclosed in response to FOIA requests—regardless of the specific circumstances. But the actual issue presented for arbitration was within the scope of the arbitrator's authority to determine, i.e.,

whether the CBA was breached. The CBA expressly incorporates the ERKA into the agreement. And the ERKA specifically states that it does not "diminish a right of access to records . . . as otherwise provided by law," MCL 423.510, thereby incorporating the FOIA into the agreement. See *Newark Morning Ledger Co v Saginaw Co Sheriff*, 204 Mich App 215; 514 NW2d 213 (1994) (addressing the relationship between the ERKA and the FOIA). Thus, the arbitrator was conferred authority to interpret and apply the ERKA, as well as the FOIA in determining whether there was a violation of Article 7, Section 4 of the CBA as alleged by plaintiff in its grievance. See, e.g., *Saginaw v Mich Law Enforcement Union, Teamsters Local 129*, 136 Mich App 542, 553-554; 358 NW2d 356 (1984). Instead of pursuing its administrative remedies through arbitration as required under the CBA, plaintiff bootstrapped the broader issue of whether internal affairs investigation reports should always be exempt from disclosure under the FOIA and filed its complaint in the Court of Claims. This was not an action challenging a specific FOIA request. In other words, plaintiff sought an advisory opinion as to what should happen in the future if another similar FOIA request is ever submitted to defendant. But as defendant argues, and the Court of Claims held, that matter does not present an "actual controversy" warranting a declaratory judgment. Accordingly, Counts I and III were properly dismissed under MCR 2.116(C)(10) pursuant to the ripeness doctrine. See *Van Buren Charter Twp*, 319 Mich App at 543.

Plaintiff also challenges the dismissal of Count II of its amended complaint, arguing that the Court of Claims failed to recognize the validity of "reverse FOIA" actions and also erred by dismissing this claim without determining whether an exemption under FOIA would prohibit the disclosure of internal affairs investigation reports in the future. We disagree.

First, contrary to plaintiff's claim, the Court of Claims did recognize plaintiff's claim as a "reverse FOIA" action. But plaintiff was not, in fact, seeking to prevent the disclosure of any specific, identifiable internal affairs investigation reports under the FOIA in this case—the records had *already* been disclosed. While plaintiff refers us to the case of *Bradley*, 455 Mich at 304, that case is inapposite because the plaintiffs there were seeking to prevent the release of specific requested public records *before* they were disclosed. In other words, the plaintiffs were contesting "live" FOIA requests. *Id*. at 289-290.

Second, in Count II plaintiff sought a declaration that, in the future, all internal affairs investigation reports are to be exempt from disclosure under an exemption enumerated in the FOIA itself, specifically, MCL 15.243(1)(s)(*ix*). However, no exemption set forth in FOIA *prohibits* disclosure, although nondisclosure is *authorized* when an exemption is applicable. See MCL 15.243(1). Indeed, our Supreme Court has held that "[a]ny asserted right by third parties to prohibit disclosure must have a basis independent of the FOIA." *Tobin*, 416 Mich at 669. As the Court of Claims held, plaintiff failed to plead in Count II any independent basis that would prohibit the disclosure of internal affairs investigation reports. Additionally, as defendant points out, because exemptions are discretionary within the FOIA, even if any of the portions of a requested document fell within these discretionary exemptions, plaintiff has not shown that the appropriate

course of action—redaction—was not, and will not be, exercised appropriately in future cases.  In any case, Count II was properly dismissed under MCR 2.116(C)(8).

Affirmed.


/s/ Mark J. Cavanagh